SCATTERING FORK DRAINAGE DISTRICT *et al.*, Plaintiffs-Appellants, *v.* RICHARD B. OGILVIE *et al.*, Defendants-Appellees.

(No. 12399;

Fourth District—May 2, 1974.

*Rehearing denied June 5, 1974.*

John H. Armstrong and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellants.

William J. Scott, Attorney General, of Springfield (William P. Ryan, Assistant Attorney General, and James S. Parker, Special Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Plaintiffs-Appellants Scattering Fork Drainage District in the County of Douglas and State of Illinois, a body politic and corporate, Bruce T. Williams, and John Warfel, appeal from a judgment of the circuit court of Douglas County which dismissed each count of their amended complaint with prejudice. The trial judge's ruling and the reasons in support thereof are embodied in the record in the form of a comprehensive written opinion. It appears that he found that each count of the complaint failed to state a cause of action upon which injunctive relief could be based. The trial judge stated at the conclusion of the opinion, "Plaintiffs' theories are ingenious; however, the Court believes the complaint *to be insufficient to allege any reason why the named officials should be enjoined from executing the proposed agreement.*" (Emphasis added.)

The complaint in question consists of nine counts. Each of these counts have, in common, the following factual averments: The Congress of the United States, by virtue of Public Law 89-298, approved Oct. 27, 1965, authorized the construction of a water reservoir project, to be known as the Lincoln Reservoir, to be located on the Embarras River and which would be spread over portions of the Counties of Coles, Douglas and Cumberland. The Act authorized the United States Corps of Engineers to enter into an agreement with the State of Illinois whereby the Corps would construct the reservoir. Congress will not provide funding for the

project until the State of Illinois enters into an agreement with the Federal government concerning the subjects of water supply and recreation as they relate to the project. The State must also agree to make certain financial commitments in order to receive Federal funds.

Each count of the complaint asserts that the described agreements would violate the Constitution of the State of Illinois and infringe other rights of the plaintiffs. Plaintiffs allege that they have no adequate remedy at law, that they will suffer irreparable damage and seek an injunction restraining defendants from entering into the agreements with the Federal Government.

The State of Illinois enabling legislation concerning the Lincoln Reservoir is to be found in the following statutes: Public Act 76-2540, Laws of Illinois, page 1040, which provides in pertinent part:

"Section 1. The Department of Public Works and Buildings is designated as the State agency to work with the Federal Government toward development of the Lincoln Reservoir Project on the Embarras River in general conformity with the provisions of 'Interim Report No. 2, Wabash River Basin Comprehensive Study, Indiana, Ohio and Illinois', prepared by the Louisville District, U.S. Army Corps of Engineers. The Department shall work in close cooperation with other units of State government toward rapid implementation of the project.

Section 2. The Department is authorized to enter into agreements with the Federal Government to provide for financial contributions toward the water supply, recreation, and stream flow regulation aspects of the multiple purpose Federal project, subject to the appropriation of funds by the General Assembly and the approval of the Governor.

\* \* \*

Section 6. No contract may be entered into, nor any obligation incurred for any expenditure from the appropriation made by this Act without the approval in writing of the Governor."

Ill. Rev. Stat. 1971, ch. 19, par. 1111, provides:

The Department of Conservation is authorized to enter into and carry out agreements with any agency of the United States Government to insure the performance of the items of non-federal participation involved in the acquisition of land, development, operation and maintenance of improvements of the Lincoln Reservoir on the Embarras River for the purpose of making certain portions of it suitable for public outdoor recreation utilization, including the management of fisheries and wildlife, as set

forth in House Document No. 298, First Session, 89th Congress of the United States of America."

The Department of Transportation is successor to the Department of Public Works and Buildings. Ill. Rev. Stat. 1971, ch. 19, sec. 126d, provides:

"In the execution of the powers herein granted and the duties vested in the Department of Transportation, it may, when so authorized and directed by the General Assembly, co-operate and enter into agreements with the proper agencies of the United States government, Municipal corporations of this State, political subdivisions and persons and associations, for the formulation of plans, and for the construction of any and all improvements for the control of destructive floods, and for the conservation, regulation, development and utilization of water, waterways, and water resources in the State of Illinois. Such agreements may assign to the several cooperating agencies particular projects or portions of projects for the purposes herein stated and may provide for joint understandings for said purposes and for contributions to execute any work agreed upon with any other of the above mentioned agencies in the State of Illinois to carry out the provisions of the Act."

The plaintiff in Counts I, II and III of the complaint is the Scattering Fork Drainage District, organized under provisions of the Illinois Drainage Code (Ill. Rev. Stat. 1971, ch. 42).

The plaintiff in Counts VII, VIII and IX is John Warfel who is the owner of 80 acres of land situated in Douglas County.

The plaintiff in Counts IV, V and VI is Bruce Williams whose status is alleged to be that of a citizen of the State of Illinois and a resident of Douglas County.

The various counts of the complaint may be summarized as follows:

Count I. Scattering Fork Drainage District alleges that execution of the agreements would result in the construction of the reservoir by the Corps of Engineers, that frequent artificial flooding would ensue causing damage to this plaintiff's drains and property, and further that the agreements cannot be entered into without consent of this plaintiff.

Count II. Scattering Fork Drainage District further alleges under Illinois law modification or destruction of this plaintiff's drains may not be accomplished by any entity other than plaintiff without consultation with plaintiff or an adjudication by a court that such other entity acts with legal authority in performing such modifications or destruction.

Count III. Scattering Fork Drainage District further claims that the

agreements will require the State of Illinois to insulate the Federal Government from water damage claims resulting from construction of the project and limit the liability of the State of Illinois to the District since the ensuing damages will be compensable under Federal law which provides for less compensation than does the law of the State of Illinois.

Count IV. Plaintiff Bruce Williams claims that the Embarras River "* * * is unique economically, ecologically, aesthetically and recreationally and constitutes a valuable asset of the people of the State of Illinois, is irreplaceable, and constitutes part of the healthful environment of the people * * * including plaintiff." That plaintiff has "as a citizen of Illinois, a general property right to and interest in a healthful environment which includes preservation of the Embarras River as it presently exists generally and a particular right and interest because plaintiff hunts game and wildlife whose survival * * * is dependent entirely upon continued existence of the said river as it presently exists and because plaintiff will not be able to continue said activities of recreation if defendants act as they are planning to * * *."

Count V. Plaintiff Bruce Williams alleges that the property rights and interests (described in Count IV, *supra*) are within the protection of the Environmental Control Act of Illinois (Ill. Rev. Stat. 1971, ch. 111½, sec. 1001 *et seq.*) and that defendants have failed to comply with the provisions of the Act and threaten future lack of compliance.

Count VI. Plaintiff Bruce Williams alleges that his property rights (described in the above summary of Count IV) cannot be destroyed, modified or damaged without either consultation with the plaintiff or a valid adjudication by a court of competent jurisdiction that defendants may so act with proper legal authority.

Count VII. Plaintiff John Warfel alleges that if the agreements are signed and the reservoir constructed the drain tiles on his lands will be artificially flooded, thus rendered inoperable, with resulting crop damage and diminished value of the lands. He also alleges (as plaintiff Scattering Fork alleged in Count III of the complaint) that under the agreements in question the State of Illinois would be required to insulate the Federal Government from water claim damage caused by construction of the project and that same agreements limit the liability of the State of Illinois to this plaintiff to the amount of compensation authorized by the Congress of the United States which is allegedly less than the amount allowable under Illinois law.

Count VIII. Plaintiff John Warfel alleges that his property cannot be subjected to taking, alteration, modification or damage without his consent.

Count IX. Plaintiff John Warfel alleges that his property cannot be

taken, damaged, etc., without consulting him or, in the alternative, without a court adjudication that the defendants or other persons or entities have legal authority to so act.

We agree with defendants that the grounds for relief relied upon by plaintiffs fall within four general propositions.

The first proposition is that before defendants enter into agreements with the Federal government for the construction of Lincoln Reservoir they must obtain the consent of plaintiffs or secure court adjudication establishing their legal authority to so act.

Plaintiff Scattering Fork Drainage District, in support of this proposition, cites the following sections of the Drainage Code (Ill. Rev. Stat. 1971, ch. 42):

12-7. This section makes it a misdemeanor to wilfully obstruct, injure or destroy any covered drain constructed through the lands of others or any other drain, levee, drainage structure or pumping plant, whether private, mutual or district. It further provides that anyone who wilfully cuts or breaches any private mutual or district levee is guilty of a felony. Fines and imprisonment for the commission of these offenses are specified in the statute. This section also provides for the recovery of civil damages resulting from commission of the prohibited acts.

3-1. Provides that drainage districts may be formed to construct and maintain drains, levees, etc. for agricultural, sanitary or mining purposes.

1-2. This section contains definitions of words and phrases used in the Illinois Drainage Code.

1-4. Establishes the jurisdiction of the Circuit Court pertaining to the organization and operation of drainage districts.

4-34. Provides that commissioners of a drainage district are officers of the court and as such are under control of the court and that reports and petitions filed and verified by a majority of the commissioners shall be presumed to be correct.

6-4. Authorizes commissioners of a drainage district, subject to approval of the court, to enter into contracts with highway authorities or railroads for the construction of levees and may permit highways or railroads to operate over and across such levees, etc.

12-19. Provides that the commissioners shall "cooperate" in the exchange of information pertaining to drainage with commissioners of other districts and with local, State and Federal governments operating in fields relating to drainage.

3-24. Provides that a drainage district is a body politic, that it may sue, be sued and have the right to enter into contracts.

Plaintiff also cites the following sections of Ill. Rev. Stat. 1971, ch. 5:

127.7. Provides that any body politic organized under the provisions of the Soil and Conservation Act may take over by lease, purchase or voluntary agreement any flood prevention, etc., project located within its boundaries and undertaken by the United States or the State of Illinois with the consent of the United States or the State of Illinois or to act as agent in the acquisition, construction, operation, etc., of the project.

127.7A Provides that any soil conservation district organized under the Act has authority to cooperate and effectuate agreements with agencies of government and to plan and construct projects relating to preservation of the renewable natural resources of water, wildlife, etc. and for the control of floods, etc.

We do not perceive that any of the above citations bears any discernible connection with, or relation to, the issue of the necessity of consent to be obtained from plaintiff Scattering Fork Drainage District prior to entering into the agreements in question. Numerous other statutes and cases are cited under various subheadings of the proposition with reference to the necessity of consent, consultation and prior court approval. It would unduly lengthen this opinion to discuss each of the subheadings which are lettered (a) through (t). A few examples will suffice.

Plaintiffs maintain that the statutory power granted to the Department of Conservation does not authorize the threatened acts of the defendants here. In support of this contention various sections of Ill. Rev. Stat. 1971, ch. 127, sec. 63a5 *et seq.* are cited. These deal with the authority of the Department to take steps to prevent pollution of the rivers, lakes and streams within the State, protection of forests, etc. Nowhere, in the statute cited, is there a grant of authority to the Department to enter into the agreements in question. This argument totally ignores the express legislative grant to the Department contained in the above cited provision of Ill. Rev. Stat. 1971, ch. 19, par. 1111. The same observation is pertinent as applied to a similar contention relative to the authority of the Department of Transportation.

Plaintiffs also urge that property already devoted to a public use (*i.e.*, the Drainage District) cannot be condemned without a specific grant of authority from the Legislature, citing *Department of Public Works & Buildings v. Ells*, 23 Ill.2d 619. In *Ells* the Department of Public Works of the State of Illinois sought to condemn lands owned by a local school district. The supreme court held precisely what plaintiffs say it held. Here, however, the defendants do not seek to condemn any of the lands in question, nor does the State of Illinois. If, as and when the

Lincoln Reservoir is constructed the Federal government will do the taking, and its authority to condemn is not questioned.

■■ We agree with the holding of the trial court that the complaint does not allege facts or reasons establishing, or tending to establish, the necessity for either consent or consultation with plaintiffs or, as a prerequisite to their exercise of authority granted under the statute, the adjudication of that authority prior to entering into the agreements in question.

Plaintiffs' next proposition is that the defendants should be restrained from entering into the agreements for the construction of the reservoir because compensation to property owners under a Federal condemnation proceeding is less than they would receive under the law of the State of Illinois and some damages compensable under State law are not compensable under Federal law.

The plaintiffs' argument here is to the effect that "The United States acting pursuant to its navigation power does not have to compensate rights recognized by private state law on the theory that such rights are the creature of state law only and are all subject to the overriding Federal interest which may be asserted at any time."

Plaintiffs assert that the Federal government, in the construction of the Lincoln Reservoir, is proceeding under the navigation power and then develops the argument that certain damages so occasioned are not compensable under the law of this State. The argument is bottomed entirely upon the premise that the navigation power of the Federal government is threatened to be employed. What impels this conclusion is not set forth in the brief or argument. We note that there is no such allegation in the complaint. Defendants maintain that the purpose of the reservoir is flood control and that the Federal government does not act pursuant to its navigation power. Assuming, without deciding, that certain elements of damage compensable under State law are not compensable under a Federal taking the plaintiffs state no cause or reason, and cite no authority which precludes the defendants from exercising the specific legislative grant of authority to enter into the proposed agreements. They do not contend that the legislature exceeded its authority in enacting the enabling legislation or that the legislation is unconstitutional, only that the defendants should not exercise the authority. The defendants here are not seeking to exercise the power of eminent domain, only to enter into agreements as expressly authorized by the legislature.

Plaintiffs cite no authority which establishes that they have a right to be compensated under State law or, a right to force the taking to be accomplished under the State exercise of its power of eminent domain.

The next proposition is urged by plaintiff Bruce T. Williams who maintains in Count IV of the complaint that the acts of the defendants sought to be enjoined are in violation of article XI of the 1970 Constitution which guarantees to him a healthful environment. Article XI provides:

## "ARTICLE XI

### ENVIRONMENT

Sec.

1. Public Policy—Legislative Responsibility.
2. Rights of Individuals.

§ 1. Public Policy—Legislative Responsibility

The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

§ 2. Rights of Individuals

Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law."

As previously noted plaintiff alleges that the Embarras River is "* * * unique economically, ecologically, aesthetically and recreationally * * * and constitutes part of the healthful environment of the people * * * including plaintiff." Count IV further alleges that as a citizen of the State of Illinois he has "* * * a general property right to and interest in a healthful environment which includes preservation of the Embarras River as it presently exists generally and a particular right and interest because plaintiff hunts game and wildlife whose survival *for that purpose* [emphasis added] is dependent entirely upon continued existence of the said River as it presently exists because plaintiff will not be able to continue said activities of recreation if defendants act * * *."

■■ Motions to dismiss or strike a pleading admit facts well pleaded but not conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. (*Pierce v. Carpentier*, 20 Ill.2d 526, 531, 169 N.E.2d 747.) Plaintiff's allegation that the Embarras River is unique economically, ecologically, aesthetically and recreationally is a conclusion, it is totally unsupported by any specific

allegations which in any way point to or remotely tend to establish its alleged uniqueness. Plaintiff's allegation that he has a "general property right" is likewise conclusionary. Plaintiff's brief departs from the "general property right" language of Count IV of the complaint in his argument concerning this count. Rather he urges that, "It is essential to note that Mr. Williams alleges two separate interests * * * The first is his *general interest* in the continued existence of the Embarras River * * *." The complaint, as above noted, does not state any underlying fact or specifics which establish a "general property interest" in plaintiff. Neither do we find any citation of authority which supports the assertion.

■■ Plaintiff next asserts "There can be no dispute that the condition of the river as it presently exists and as alleged * * * is a part of the 'healthful environment' referred to in section 1 of article XI of the 1970 Constitution. This statement in the brief is also unsupported by authority as is the conclusion pleaded unsupported by fact. Assuming, however, that the statement that there is no doubt, in fact establishes the proposition plaintiff's status is that of a hunter of "game and wildlife" a recreation which he alleges, he will be unable to pursue if the project is constructed. We agree with the trial that the alleged causal connection between the destroying of the habitat of the game and wildlife to be hunted and the right to a healthful environment is too remote to warrant the relief sought.

In Count V of the complaint, plaintiff Bruce T. Williams maintains that the property rights and interest (described in the discussion of Count IV, *supra*) are within the protection of the Environmental Control Act of Illinois and maintains that the defendants have failed to comply and threaten future lack of compliance with the provisions of the Act. The acts and omissions alleged to be violations of the Environmental Protection Act are contained in paragraph 16 of Count V and are as follows:

(a) Defendants have failed to consult with the Environmental Protection Agency or the Pollution Control Board before entering into agreements on water supply and recreation with the United States with regard to Lincoln Lake Reservoir project.

(b) Defendants have failed to obtain the approval of the Environmental Protection Agency or the Pollution Control Board before entering into agreements on water supply and recreation with the United States with regard to Lincoln Lake Reservoir project.

(c) Defendants and all of them have failed to request and refuse to participate in a hearing before the Environmental Protection

Agency or the Pollution Control Board at which plaintiff could present his claim of damages for destruction of his property interests.

(d) Defendants and all of them have failed to take into consideration the considerations and the characteristics and qualities of the Embarras River specified in paragraphs 13 and 14 hereinabove in undertaking to execute and effectuate water supply and recreation agreements with the United States regarding Lincoln Lake Reservoir project.

It is to be noted that the complaint makes no specific reference to specific sections of the Act allegedly violated by the recitals contained in said paragraphs.

In his brief plaintiff first alleges that section 1002(a)(v) has been violated. That section of the Act provides:

"[t]hat it is the obligation of the State Government to manage its own activities so as to minimize environmental damage; to encourage and assist local governments to adopt and implement environmental-protection programs consistent with this Act; to promote the development of technology for environmental protection and conservation of natural resources; and in appropriate cases to afford financial assistance in preventing environmental damage; and * * *."

We find no allegation in the above paragraphs of the complaint which allege a violation of said section 1002(a)(iv).

Plaintiff next argues in his brief that section 1015 of the Act has been violated. This section provides that owners of public water supplies shall submit plans and specifications to the agency and obtain written approval before construction of any proposed water supply installations. While paragraph (b) of the complaint alleges that the defendants have failed to obtain the approval of the EPA before entering into agreements on water supply, liberally construed, it is arguable that this charges a violation under section 1015. However, as the trial judge noted, there is no allegation that the defendants or indeed the State of Illinois is the owner of the project in question. We further note that section 1015 applies to "public water supplies". Under the provisions of section 1003 (j) a public water supply is defined (so far as is pertinent here) to include reservoirs "* * * actually used or intended for use for the purpose of furnishing water for drinking or general domestic use in incorporated municipalities; or unincorporated communities where 10 or more separate lots or properties are being served or intended to be served; State-owned parks and memorials; and State-owned educational, charitable or penal institutions."

We note that the complaint does not allege that the reservoir in question is a public water supply within the meaning of the Act. Plaintiff disposes of that problem by a statement in his brief to the effect that a Lincoln Lake reservoir is such a public water supply or reservoir within the meaning of section 1003(j).

He further argues in his brief that Count V of the complaint alleges that one of the purposes for the construction of the reservoir is to provide a "public water supply". We see no reference to public water supply. There is a reference in paragraph 9 of the complaint to "the subjects of water supply" but this scarcely imports an allegation that the reservoir is a public water supply within the meaning of the definition contained in section 1003(j), *supra*. In his brief, plaintiff also argues that section 1012(b) of the Act is violated. This section prohibits the construction, installation or operation of any equipment, facility, vessel or aircraft capable of causing or contributing to water pollution without a permit granted by the agency. The brief asserts that the reservoir is capable of contributing to water pollution. We find no such allegation in the complaint. We agree that Count V fails to state a cause of action.

The injunction heretofore entered in this court is hereby dissolved and the judgment of the trial court is affirmed.

Judgment affirmed.

SMITH, P. J., and CRAVEN, J., concur.