June 30, 1998

NO. 5-97-0185

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

JOSEPH M. GLISSON,                   )  Appeal from the 

                                     )  Circuit Court of 

     Plaintiff-Appellant,            )  Williamson County.

                                     )  

v.                                   )  No. 97-CH-7

                                     )  

THE CITY OF MARION, ILLINOIS, and    )

ROBERT BUTLER, Mayor,                )  Honorable

                                     )  Paul S. Murphy, 

     Defendants-Appellees.           )  Judge, presiding.  

_________________________________________________________________

JUSTICE RARICK delivered the opinion of the court:  

Plaintiff, Joseph Glisson, filed a complaint for injunctive and declaratory relief in the circuit court of Williamson County, seeking to enjoin the City of Marion from constructing a dam and reservoir on Sugar Creek.  Glisson alleged, 
inter alia
, that the project will destroy the habitat for two species listed as endangered or threatened under the Illinois Endangered Species Protection Act (Act) (520 ILCS 10/1 
et seq.
 (West 1994)).  The circuit court dismissed Glisson's complaint, finding that he lacked standing.  We reverse.

The City of Marion (Marion) and the Lake of Egypt Water District, which encompasses six counties and 15,000 rural customers, need more water.  Since the 1920s, Marion has drawn most of its water from Marion City Lake.  Marion's requirement of 1.7 million gallons per day of raw water far exceeds Marion City Lake's capacity of 1.1 million gallons per day.  Furthermore, the water from Marion City Lake is of poor quality, requiring substantial chemical treatment to render it potable.  The Lake of Egypt Water District also contends that it needs a new source of water.  The water district gets its water from the Lake of Egypt, another reservoir of marginal quality.

Marion proposed to solve both problems by constructing a new water-supply reservoir.  Marion would construct a dam across Sugar Creek near Creal Springs, Illinois, some seven miles southwest of Marion.  The result would be a lake approximately 2,500 feet wide and 20,000 feet long and could supply 8.9 million gallons of water per day.  It would also result in the loss of about eight miles of one of the last free-flowing streams in Southern Illinois and a corresponding loss of wildlife habitat.

As one of the navigable waters of the United States, Sugar Creek falls under Federal jurisdiction.  Section 404 of the Clean Water Act (33 U.S.C.A. §1344 (West 1986 & Supp. 1997)) requires anyone seeking to discharge dredge or fill materials into the navigable waters of the United States to obtain a permit from the United States Army Corps of Engineers (Corps).  Because of the requirement that the Corps issue a permit for the construction of the reservoir, the project became subject to the National Environmental Policy Act (NEPA) (42 U.S.C.A. §4321 
et seq.
 (West 1994)) which requires, 
inter alia
, that every recommendation or report on a proposal for a major Federal action significantly affecting the human environment be accompanied by an environmental impact statement (EIS).  42 U.S.C.A. §4332(2)(C) (West 1994).  Federal regulations authorize the preparation of an environmental assessment to determine whether a project will significantly impact the human environment.  40 C.F.R. §1501.4(1).

Marion applied for a section 404 permit from the Corps.  The Corps prepared an environmental assessment and provided copies to various state and Federal agencies.  The Corps concluded that the proposed project would create no significant environmental impact and that, therefore, no EIS was required.  The Sierra Club and others brought an action in the United States district court, and the district court reversed the Corps, finding that the project would create a significant impact on the environment and that an EIS was therefore required.  
Simmons v. United States Army Corps of Engineers
, No. 91-CV-4188-JLF (S.D. Ill. June 25, 1992) (
Simmons I
).  

The Corps prepared an EIS and a supplemental EIS.  Commenting on the draft EIS, the Illinois Department of Natural Resources (IDNR) opposed the project, but the Corps nevertheless issued the city another permit, precipitating a second Federal action.  The district court ruled against the plaintiffs (
Simmons v. United States Army Corps of Engineers
, No. 96-CV-4246-JPG (S.D. Ill. December 18, 1996) (
Simmons II
)), and they appealed.  During the pendency of that appeal, Glisson filed the present action alleging that the project would violate the Act and do other harm to the environment.  Marion filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1994)), arguing, 
inter alia
, (1) that Glisson lacked standing to sue under the Act, (2) that the issues were not ripe for adjudication because Glisson's petition failed to present an actual justiciable controversy, (3) that Glisson's petition failed to state a claim upon which relief could be granted because Marion had complied with its obligations under the Act, and (4) that Glisson's petition failed to state a claim upon which relief could be granted because the Act does not provide for declaratory or injunctive relief.  The circuit court granted Marion's motion to dismiss, finding that Glisson lacked standing because (1) article XI, section 2, of the Illinois Constitution of 1970 did not empower Glisson to file a civil action to enforce the Act absent express statutory authorizations to do so, (2) the General Assembly vested the power to implement and enforce the Act in the IDNR and the Attorney General, (3) the General Assembly did not provide statutory authorization for a private person to bring a civil action to enforce the provisions of the Act, (4) the IDNR has promulgated regulations to enforce the Act and Marion complied with those regulations, (5) Glisson, as an individual, does not have standing to enforce the Act, and (6) Glisson's alleged interest in the subject matter of this litigation, which such interest allegedly causes him to feel intellectual, spiritual, moral, and psychic wounds, does not rise to the level of a case or controversy.  

During the pendency of the present appeal, the United States Court of Appeals reversed the district court in 
Simmons II
 and remanded the cause to the court with directions that the district court void the second permit issued by the Corps.  
Simmons v. United States Army Corps of Engineers
, 120 F.3d 664 (7th Cir. 1997).  In light of the Seventh Circuit's action, Marion moved to dismiss the present appeal, arguing that it is moot.  Specifically, Marion maintains that because the section 404 permit has been voided by the district court, it cannot continue with construction of the dam and reservoir and it has in fact stopped all construction activities.  Glisson counters that Marion is still proceeding with condemnation proceedings and is actively pursuing another permit.  We find that the present appeal is not moot and hereby deny Marion's motion to dismiss.

On appeal, Glisson argues first that article XI, section 2, of the Illinois Constitution of 1970 gives him standing to bring the present action.  Initially, we must address Marion's argument that Glisson has waived this argument by failing to adequately present and plead these issues before the trial court.  Marion maintains that Glisson did not argue the applicability of article XI in any pleading and that he raised it for the first time at the hearing on Marion's motion to dismiss.  As Glisson points out, however, standing is an affirmative defense, not a requirement of pleading.  
Contract Development Corp. v. Beck
, 255 Ill. App. 3d 660, 627 N.E.2d 760 (1994).  It was not incumbent on Glisson to plead facts demonstrating that he had standing.  Rather, it was the responsibility of Marion to argue Glisson's lack of standing.  We find that Glisson's argument that he has standing under article XI, section 2, of the Illinois Constitution to maintain the present action to be properly before us, and we now turn to an analysis of the merits of the argument.  

Glisson argues that he has standing under article XI, section 2, of the Illinois Constitution of 1970 to bring the present action.  Specifically, he contends that he has a constitutional right to a healthful environment, that the preservation of endangered and/or threatened species is necessary to the maintenance of such environment, and that Marion's proposed reservoir project will infringe on his right to such environment.

Since its passage, the courts of this state have had few occasions to address the scope and meaning of article XI.  Consequently, there is little case law to guide us.  We begin our analysis by setting out the provisions of article XI.

Article XI, section 1, provides as follows:

"The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations.  The General Assembly shall provide by law for the implementation and enforcement of this public policy."  

Article XI, section 2, provides as follows:

"Each person has the right to a healthful environment.  Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law."

Because there is a paucity of case law interpreting these two sections and because their meaning is relevant to the disposition of this case, the report of the general government committee of the Sixth Illinois Constitutional Convention is set out here in some detail:

"This proposal recommends that the new Constitution include an Environment Article with four Sections.  It generally expresses the Committee's view that there is a vital need for the new Constitution to speak to the problem of environmental pollution and that a constitutional expression can contribute in substantial part to the resolution of the problem ***.

Section 1
.

Public Policy

The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations.

***

*** The Committee selects the word `healthful' as best describing the kind of environment which ought to obtain.  `Healthful' is chosen rather than `clean', `free of dirt, noise, noxious and toxic materials' and other suggested adjectives because `healthful' described the environment in terms of its direct effect on human life while the other suggestions describe the environment more in terms of its physical characteristics. ***

* * *

Section 2
.

Legislative Responsibility

The General Assembly shall provide by law for the implementation and enforcement of this public policy.

* * *

*** It is the Committee's intention in recommending this Section (and the last phrase of Section 4[]) that the Legislature play a leadership role in the efforts to solve this problem as well as the entire realm of problems presented by environmental pollution.

Section 3
.

The Right

Each person has the right to a healthful environment.

Expression of this fundamental right in the context of a present and continuing crisis gives recognition to the problem of environmental pollution as one of fundamental significance.  
Even more importantly it provides the vehicle for the individual to prosecute a violator.
  [Emphasis added.] ***

***

The word `environment' means the aggregate of all conditions affecting the existence, growth[,] and welfare of organisms.

While the emphasis is on the right of the individual in this Section, the Committee did not mean to raise the individual's interest in `healthful' environment to pre[]eminence over the State's interest.  The problem is of equal concern to both.  However, the State always has had the power to deal with the problem[,] whereas the individual's power to do so has generally been limited to those situations in which he could prove damage in the traditional sense.

* * *

Section 4
.

Standing

Each person may enforce this right against any party, governmental or private
, through appropriate legal proceedings subject to reasonable limitation and regulation by law. [Emphasis added.] 

This Section expresses the Committee's view that individuals should not be denied the opportunity to seek relief when so fundamental a right as that to a healthful environment is involved.  ***  

The Committee emphasizes that this Section affords individuals the opportunity to seek relief
.  [Emphasis added.]  It wants to be very clear that it does 
not
, by this Section (or by any Section in this Article for that matter) create or establish a new remedy.  Nor does this Section assume the individual's ability to prove a violation of his right.  
It merely declares that individuals have `standing' to assert violations of his right
.  [Emphasis added.]

To illustrate, assume Mr. A. lives in a town whose atmosphere is permeated with sulphur dioxide due to the emissions of a local industry.  If he filed suit against that industry seeking to enjoin its sulphuric [
sic
] emissions, the suit, under the present state of the law in Illinois, would very likely be dismissed because Mr. A. could not show that he is affected any differently by these emissions than the town people as a whole.  This is what is commonly called dismissal for lack of `standing'.  The theory is that a wrong or tort which is suffered by the public in general is a public injury which can only be asserted by the Attorney General.  Unless an individual can show that he is injured significantly different than the public generally, unless he can show a `special injury', he will be said to have no `standing' and will not be afforded the opportunity to seek relief.

Because the wrong here has reached crisis proportions and because it affects individuals in so fundamental a way, the Committee is of the view that the `special injury' requirement for standing is particularly inappropriate and ought to be waived.  Section 4[], therefore, allows the individual the opportunity to prove a violation of his right even though that violation may be a public wrong, or one common to the public generally.

* * *

It must be emphasized that allowing standing does 
not
 assume proof of the claim.  ***  Section 4[] merely affords the individual the opportunity to prove his claim and to convince the court or administrative body that he is entitled to relief.  This Section does 
not
 create any new remedies.  The individual will have available to him, if he can prove a violation of his right and if he can establish he is entitled to relief, only the traditional remedies of injunction or declaratory judgment.  It does not provide him with compensatory (money) damages without strict proof of economic injury (personal injury).

This Section clarifies that the individual may assert his right `against any party, governmental or private', further re[]enforcing the standing of the individual.

`Appropriate legal proceedings' is meant to include law suits, administrative proceedings, and any other legal proceeding.

The term `subject to reasonable limitation and regulation by law' is included to emphasize not only the leadership function the Committee envisions for the Legislature *** but also the power of the General Assembly to reasonably limit and regulate the declared ability of the individual to enforce his right.  The Committee conceives that a reasonable exercise of this power would include a law which required the individual to file any environmental claims with the Attorney General and that only if he did 
not
 act could the individual file suits; a law creating an administrative agency in which all claims against pollutors [
sic
] would have to be filed, with judicial review provisions; the creation of a special court, such as traffic court, which would handle all pollution suits; or a law requiring that all pollution suits be brought by the Attorney General with the individual's right to intervene.

The Committee decided not to specify what it thought were the appropriate limits of legislative limitation and regulation.  Rather, it selected the word `reasonable' so as to allow for flexibility and adjustment in the future.  The power, of course, could not be exercised so as to effectively deprive the individual of his standing."  (Emphasis in original except where otherwise noted.)  Report of the Committee on General Government, reprinted in the Proceedings of the Sixth Illinois Constitutional Convention, at 696-705. 

Sections 1 and 2 of the committee report became section 1 of article XI, and sections 3 and 4 of the committee report became section 2 of article XI.

Next, we review the law of standing.  Along with the doctrines of mootness, ripeness, and justiciability, standing is one of the devices by which courts attempt to preserve for consideration only those disputes which are truly adversarial and capable of resolution by judicial decision.  
Dilanjian Taxi Service, Inc. v. City of Chicago
, 203 Ill. App. 3d 300, 560 N.E.2d 1195 (1990).  The purpose of the doctrine is to ensure that courts are deciding actual, specific controversies and not abstract questions or moot issues.  
In re Estate of Wellman
, 174 Ill. 2d 335, 673 N.E.2d 272 (1996).  The essence of the inquiry is whether a party is entitled to have the court decide the merits of the dispute or particular issue.  
Amtech Systems Corp. v. Illinois State Toll Highway Authority
, 264 Ill. App. 3d 1095, 637 N.E.2d 619 (1994).  To have standing, a plaintiff must present an actual controversy between adverse parties, and as to that controversy, the plaintiff must not be merely curious or concerned but must possess some personal claim, status, or right.  
Potter v. Ables
, 242 Ill. App. 3d 157, 610 N.E.2d 159 (1993).  Although standing is designed to preclude persons having no interest in a controversy from bringing suit, it should not prevent a valid suit from being litigated.  
In re Marriage of Rodriguez
, 131 Ill. 2d 273, 545 N.E.2d 731 (1989).  To determine whether a plaintiff has standing, the pivotal factor is whether the plaintiff will benefit from the relief sought.  
Martini v. Netsch
, 272 Ill. App. 3d 693, 650 N.E.2d 668 (1995).

With respect to the issue of whether a person has standing to bring an action for the violation of a statute, it has been held as follows:

"Where the suit alleges injury due to violation of a statue, the doctrine of standing requires that the plaintiff be one of the class designed to be protected by the statute, or for whose benefit the statute was enacted, and to whom a duty of compliance is owed.  The object of the statute, the nature of the duty imposed by it, and the benefits resulting from its performance dictate what persons are entitled to sue thereunder."  
Cardinal Glass Co. v. Board of Education of Mendota Community Consolidated School District No. 289
, 113 Ill. App. 3d 442, 445, 447 N.E.2d 546, 548 (1983), quoting 
Lynch v. Devine
, 45 Ill. App. 3d 743, 748, 359 N.E.2d 1137, 1140 (1977).

In 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 524 N.E.2d 561 (1988), our supreme court declined to adopt the zone-of-interest test for standing.  After reviewing the law of standing and the zone-of-interest test, the court found that it served no useful purpose.  The court noted that the test often led to confusion between standing and the merits of the suit.  The court also noted that with respect to violations of a statute, the test would require an examination of the goals, purposes, and objectives of the statute so as to determine whether the plaintiffs were among its intended beneficiaries.  The court further noted that this was very similar to the test used to determine whether a particular plaintiff's interest fell within the zone arguably sought to be protected by a particular statutory provision.  The court chose to adhere to the principles that standing in Illinois requires only some injury in fact to a legally cognizable interest and that plaintiffs were not required to also prove that they are arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.  The court held as follows:  "[S]tanding in Illinois requires only some injury in fact to a legally cognizable interest.  [Citation.]  More precisely, the claimed injury, whether `actual or threatened' [citation], must be:  (1) `distinct and palpable' [citation]; (2) `fairly traceable' to the defendant's actions [citation];  and (3) substantially likely to be prevented or redressed by the grant of the requested relief [citations]."  
Greer
, 122 Ill. 2d at 492-93, 524 N.E.2d at 575.  Traditionally, where the injury alleged is no different than that suffered by the public at large, such injury is insufficient for standing.  
Lynch
, 45 Ill. App. 3d at 750, 359 N.E.2d at 1142.  In the context of an alleged violation of the right to a healthful environment, however, article XI, section 2, gives individuals standing to sue for public wrongs.

In light of 
Greer
, we believe that the traditional test for determining whether a person has standing to sue for a violation of a statute is no longer viable.  The progenitor of the traditional test was 
Lynch
, a pre-
Greer
 case.  A review of the test set forth in 
Lynch
 and followed by its progeny reveals that it is virtually identical to the zone-of-interest test rejected in 
Greer
.  Both require a plaintiff to be someone the statute was designed to protect or benefit, and both require an analysis of the underlying purposes of the statute in question.  We are aware that the 
Lynch
 test has been employed since 
Greer
 (see, 
e.g.
, 
Monroe v. United States Fidelity & Guaranty Co.
, 237 Ill. App. 3d 261, 603 N.E.2d 855 (1992); 
Village of Leland ex rel. Brouwer v. Leland Community School District No. 1
, 183 Ill. App. 3d 876, 539 N.E.2d 750 (1989)), but it has not been analyzed in light of 
Greer
.  We conclude that in order to have standing to sue for a violation of a statute, a plaintiff need only meet the requirements set forth in 
Greer
.

Marion cites 
City of Elgin v. County of Cook
, 169 Ill. 2d 53, 660 N.E.2d 875 (1995), for the proposition that a plaintiff must have a legally cognizable cause of action in order to have standing.  In 
City of Elgin
, our supreme court addressed what it referred to as the plaintiff's "vague and unstructured allegations" suggesting that the preliminary construction activities might somehow violate article XI.  Our supreme court found it unnecessary to reach the issue of whether any of the plaintiffs would have standing, holding instead that section 2 did not create any new causes of action but, rather, did away with the "special injury" requirement typically employed in environmental nuisance cases.  Therefore, the court concluded that while a plaintiff need not allege a special injury to bring an environmental claim, there must nevertheless still exist a cognizable cause of action.  The court noted that in the case before it, the injuries alleged amounted to a fear that the environmental attributes of the "balefill" site would be despoiled and, in the process, nearby wildlife habitats would be damaged.  Such allegations, the court held, were not actionable absent a cognizable cause of action.

Marion's reliance on 
City of Elgin
 is misplaced.  Standing was never an issue in 
City of Elgin
.  The only reference to standing was when the court stated, "While it is not clear which, if any, of the original plaintiffs would have standing to assert a violation of article XI of the Illinois Constitution, this question need not be decided."  
City of Elgin
, 169 Ill. 2d at 86, 660 N.E.2d at 891.  The court then held that the alleged injury did not constitute a cognizable cause of action.  A careful reading of 
City of Elgin
 reveals that our supreme court did not hold that a cognizable cause of action was necessary to have standing.  Indeed, the court's language implies that some of the original plaintiffs might have had standing to allege a violation of article XI, but the court found the issue to be irrelevant given that there was no cognizable cause of action.  Further, a holding to have held that standing requires a cognizable cause of action would be a significant departure from 
Greer
.  Had the court wished to make so fundamental change to the law of standing, it would have been more explicit.

We also note that the court in 
Noyola v. Board of Education of City of Chicago
, 227 Ill. App. 3d 429, 592 N.E.2d 165 (1992), held that it is not necessary for a plaintiff to satisfy the requirements for stating a private cause of action in order to have standing to sue for the violation of a statute.  The court noted that a private cause of action will be found to exist where (1) the plaintiff is a member of the class of persons for whose benefit the statute was enacted, (2) the plaintiff's injury is one the statute was designed to protect, (3) a private right of action is consistent with the underlying purpose of the statute, and (4) a private right of action is necessary to provide an adequate remedy for violations of the statute.  
Noyola
, 227 Ill. App. 3d at 432, 592 N.E.2d at 167, citing 
Board of Education of City of Chicago v. A, C & S, Inc.
, 131 Ill. 2d 428, 546 N.E.2d 580 (1989).  Noting that the requirements for stating a private cause of action were very similar to the requirements of the zone-of-interest test rejected in 
Greer
, the court held that in light of 
Greer
 it was inappropriate to require a plaintiff to meet the requirements for a private cause of action in order to have standing.

Marion also cites 
Scattering Fork Drainage District in County of Douglas v. Ogilvie
, 19 Ill. App. 3d 386, 311 N.E.2d 203 (1974), for the proposition that Glisson does not have standing.  In 
Scattering Fork
, plaintiffs sought an injunction to prevent the construction of a reservoir on the Embarras River.  In one count of the complaint, plaintiff Williams alleged, "[The Embarras River is] unique economically, aesthetically[,] and recreationally *** and constitutes part of the healthful environment of the people *** including plaintiff", and he further alleged that as a citizen of Illinois he had "a general property right to and interest in a healthful environment which includes preservation of the Embarras River as it presently exists generally and a particular right and interest because plaintiff hunts game and wildlife whose survival for that purpose is dependent entirely upon continued existence of the said River as it presently exists because plaintiff will not be able to continue said activities of recreation if defendants act ***."  
Scattering Fork
, 19 Ill. App. 3d at 394, 311 N.E.2d at 210.  The trial court dismissed the complaint, finding that it failed to state a cause of action.  The appellate court affirmed, holding that the allegation that the condition of the river was part of plaintiff's "healthful environment" was unsupported by authority or fact.  The court further held that the connection between the destruction of the habitat for the game and wildlife which plaintiff hunted and the right to a healthful environment was too remote to warrant the relief sought.

Marion's reliance on 
Scattering Fork
 is also misplaced.  Again, standing was not an issue in 
Scattering Fork
.  The trial court dismissed the complaint because it failed to state a cause of action, and the appellate court affirmed on that basis.  Plaintiff's standing was never challenged, and the court therefore had no occasion to consider the subject.

To resolve the issue before us, we need not determine whether Glisson has stated a cognizable cause of action.  We need only determine whether he has alleged an injury to a legally cognizable interest.  More correctly, we must determine whether Marion successfully demonstrated that Glisson suffered no injury in fact to any legally cognizable interest.  We conclude that it failed to do so.  In its section 2-619 motion to dismiss, Marion argued, 
inter alia
, that Glisson did not have standing because (1) Glisson "fail[ed] to allege any legally recognized interest in any endangered or threatened Illinois species which would fall within the zone of interest protected by the Illinois Endangered Species Act", (2) Glisson was not a member of any class designed to be protected by the Act, and (3) Glisson was not a person for whom the Act was enacted and to whom a duty of compliance was owed.  A legally cognizable interest is a substantive, legally protected interest, which is a right or interest either recognized by common law or created by statute.  
Lynch
, 45 Ill. App. 3d at 747-48, 359 N.E.2d at 1140.  Article XI, section 2, of the Illinois Constitution states that persons have the right to a healthful environment.  This creates a legally cognizable interest.  Glisson has alleged that this interest will be violated by the destruction of the habitat of two endangered species.  Given the breadth of the language of article XI, the protection of endangered and threatened species could arguably be part of a person's healthful environment.  We need not decide that question, however, given the procedural posture of this case.  As noted above, standing is an affirmative defense.  It was incumbent upon Marion to demonstrate that the destruction of animals listed as threatened or endangered under the Act was not an infringement of Glisson's right to a healthy environment.  It did not do so.

We wish to emphasize the narrowness of our holding.  We hold that because Marion failed to demonstrate that Glisson's right to a healthy environment did not include the right to have endangered or threatened species protected, he has standing to seek declaratory and injunctive relief for violations of the Act.  We do not hold that his complaint, as currently drafted, states any cognizable cause of action.  Further, we do not address the question of whether the right to a healthy environment encompasses the right to protect endangered or threatened species.  These questions are not properly before us, and their resolution is not necessary to the disposition of this appeal.

For the foregoing reasons, the judgment of the circuit court of Williamson County is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

Appellee's motion denied; judgment reversed; cause remanded. 

CHAPMAN and HOPKINS, JJ., concur.