Docket No. 86160–Agenda 13–March 1999.

JOSEPH M. GLISSON, Appellee, v. THE CITY OF MARION 
et al
., Appellants.

Opinion filed October 21, 1999.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, Joseph M. Glisson, filed a complaint for declaratory and injunctive relief in the circuit court of Williamson County against defendants, the City of Marion, Illinois, and its mayor, Robert Butler. Plaintiff’s complaint sought a declaration that defendants’ construction of a dam and reservoir on Sugar Creek, located in Williamson and Johnson Counties of Illinois, violates the Illinois Endangered Species Protection Act (520 ILCS 10/1 
et seq
. (West 1998)). The complaint alleged, 
inter alia
, that the project will destroy the habitat for two species that Illinois lists as threatened and endangered, resulting in the elimination of those species from the area in violation of the Act. Plaintiff also sought to enjoin defendants from constructing such a project on Sugar Creek. The circuit court granted defendants’ motion to dismiss plaintiff’s complaint for lack of standing. The appellate court reversed, holding that plaintiff has standing to pursue an action against defendants. 297 Ill. App. 3d 841. Defendants filed a petition for leave to appeal, which this court allowed. 177 Ill. 2d R. 315. We also allowed the Sierra Club, Defenders of Wildlife, and the Environmental Law and Policy Center of the Midwest leave to file a joint brief as 
amici curiae
 in support of plaintiff. 155 Ill. 2d R. 345. For the reasons that follow, we reverse the judgment of the appellate court and conclude that plaintiff lacks standing to bring this action against defendants.

BACKGROUND

The City of Marion has a water supply problem. In the past, the City has drawn most of its water from Marion City Lake. The City’s requirement of 1.7 million gallons per day of water far exceeds Marion City Lake’s capacity of 1.1 million gallons per day. Furthermore, the raw water from Marion City Lake is of poor quality, requiring substantial chemical treatment to render it suitable for human consumption. The City proposed to solve its shortage of water by constructing a dam and reservoir on Sugar Creek, located approximately seven miles southeast of Marion. The result would be a lake that is approximately 2,500 feet wide and 20,000 feet long, and a reservoir that is capable of supplying 8.9 million gallons of water per day.

Because Sugar Creek is a navigable water of the United States, the City was required to obtain a permit pursuant to section 404 of the Clean Water Act of 1977 (33 U.S.C. §1344 (1988)), which requires anyone seeking to discharge dredged or fill materials into the navigable waters of the United States to obtain a permit from the United States Army Corps of Engineers (Corps). In 1989, the City submitted an application to the Corps for a permit to construct the dam and reservoir on Sugar Creek.

The Corps prepared an environmental assessment of the project pursuant to the National Environmental Policy Act (NEPA) and its related regulations. 42 U.S.C. §4332(2)(C) (1994); 40 C.F.R. §1501.4 (1998). Copies of that assessment were provided to various federal and state agencies, including the Illinois Department of Conservation (Department). The Department recommended that the City enter into formal consultation with the Department pursuant to the provisions of the Illinois Endangered Species Protection Act (520 ILCS 10/11(b) (West 1998)). The City subsequently met with the Department to discuss the potential impact of the construction project on threatened and endangered species in the project area. The Department later concluded that the City had completed the consultation process and that “[n]o additional discussions regarding endangered and threatened species” were required before the project could begin. The Corps concluded that the proposed project would create no significant environmental impact and, therefore, that no environmental impact statement was required. Thus, the Corps issued a permit to the City.

A group of plaintiffs filed suit in federal district court challenging the issuance of the permit. The district court determined that the permit was not properly issued because the Corps had not prepared an environmental impact statement pursuant to NEPA (42 U.S.C. §4332(2)(C) (1994)) before issuing the permit. 
Simmons v. United States Army Corps of Engineers
, No. 91–4188–JLF (S.D. Ill. June 25, 1992) (
Simmons I
). The district court thus vacated the permit.

The Corps subsequently prepared both an environmental impact statement and a supplemental environmental impact statement, which concluded that the project would be “environmentally sustainable.” The Corps then issued a second permit to the City. A group of plaintiffs challenged the issuance of the second permit. The district court ruled against the plaintiffs (
Simmons v. United States Army Corps of Engineers
, No. 96–4246–JPG (S.D. Ill. Dec. 18, 1996) (
Simmons II
)), and they appealed. The United States Court of Appeals for the Seventh Circuit held that the Corps improperly issued the second permit because the Corps failed to comply with its duty under NEPA to consider all reasonable alternatives in the environmental impact statement. 
Simmons v. United States Army Corps of Engineers
, 120 F.3d 664 (7th Cir. 1997) (
Simmons II
). The Court of Appeals therefore reversed the district court in 
Simmons II
 and remanded the cause to the district court with directions to vacate the second permit issued by the Corps.

While the litigation challenging the second permit was pending before the Court of Appeals, plaintiff in this case filed a complaint for declaratory and injunctive relief. Plaintiff claimed that construction of the dam and reservoir violates sections 3 and 11(b) of the Illinois Endangered Species Protection Act (520 ILCS 10/3, 11(b) (West 1998)) because it will destroy the essential habitat of two species listed as threatened and endangered by Illinois, namely the least brook lamprey and the Indiana crayfish, and thereby will eliminate the species from the area. Plaintiff further claimed that he would suffer “intense harm” as a result of the dam and reservoir project because he is a naturalist who enjoys and uses Sugar Creek for “food gathering, recreation, spiritual, and educational activities,” and because his lifestyle is “intertwined with and dependent on the natural world in general and Sugar Creek.” Plaintiff requested that the circuit court (1) enter an order declaring that the dam and reservoir project violates the Illinois Endangered Species Protection Act, and (2) enjoin defendants from constructing the dam and reservoir.

Defendants filed a motion to dismiss plaintiff’s complaint pursuant to section 2–619 of the Code of Civil Procedure (735 ILCS 5/2–619 (West 1998)), arguing, 
inter alia
, that plaintiff lacks standing to sue under the Illinois Endangered Species Protection Act. In defendants’ memorandum of law in support of the motion to dismiss, defendants argued that plaintiff does not allege any legally cognizable interest in the conservation, preservation or protection of the threatened or endangered species that would allegedly be harmed by the dam and reservoir project. According to defendants, plaintiff’s interest is not in protecting the two species at issue, but rather, in opposing the construction of the dam and reservoir.

During a hearing on both the City’s motion to dismiss and plaintiff’s motion for a preliminary injunction, plaintiff responded to defendants’ claim of lack of standing by contending that article XI, section 2, of the Illinois Constitution of 1970 provides plaintiff with standing to pursue an action against the City.

After considering the parties’ arguments, the circuit court granted defendants’ motion to dismiss. The circuit court therefore ordered plaintiff’s complaint dismissed for plaintiff’s lack of standing as a private citizen to pursue an action against defendants for violation of the Illinois Endangered Species Protection Act. The circuit court determined that plaintiff has no direct standing to enforce the Act as an individual because the Act is implemented by the Illinois Department of Natural Resources and enforced by the Attorney General.
(footnote: 1) The circuit court noted that since 1989, when the dam and reservoir project was first proposed, two governors and three attorney generals have served the state, and none chose to contest the City’s project. The circuit court also determined that article XI, section 2, of the Illinois Constitution does not accord plaintiff standing to enforce the Act. The circuit court reasoned that, while article XI, section 2, apparently authorizes plaintiff to sue to preserve human health in appropriate circumstances and subject to legislative restriction, it does not grant plaintiff the right to file suit to protect endangered and threatened species. Rather, the protection of endangered and threatened species is delegated by statute to administrative agencies of the state and federal government.

Plaintiff appealed to the appellate court, which initially determined that the appeal was not moot because defendants were still pursuing a permit for the construction of the dam and reservoir. The appellate court also held that plaintiff has standing to pursue an action against defendants. 297 Ill. App. 3d 841. The appellate court determined that the test for whether a plaintiff has standing to maintain an action for a violation of a statute is whether the plaintiff has alleged an injury in fact to a legally cognizable interest. The court further stated that article XI, section 2, of the Illinois Constitution provides that each person has the right to a healthful environment, and that this provision creates a legally cognizable interest. The court then found that defendants failed to demonstrate that plaintiff’s right to a healthful environment did not include the right to protect endangered or threatened species. Consequently, defendants failed to demonstrate that the destruction of the least brook lamprey and the Indiana crayfish was not an infringement of plaintiff’s right to a healthful environment. Thus, defendants failed to prove that plaintiff suffered no injury to any legally cognizable interest, and as a result, defendants failed to prove that plaintiff lacked standing. The court concluded that plaintiff has standing, under article XI, section 2, of the Illinois Constitution, to sue defendants to seek declaratory and injunctive relief for violations of the Illinois Endangered Species Protection Act. The court, however, noted that it did not decide whether plaintiff’s complaint states a cognizable cause of action. The court therefore reversed the judgment of the circuit court and remanded the case for further proceedings.

ANALYSIS

The issue before this court is whether plaintiff has standing to maintain an action against defendants for an alleged violation of the Illinois Endangered Species Protection Act (520 ILCS 10/1 
et seq
. (West 1998)).

As noted, this appeal arises from the circuit court’s order granting defendants’ section 2–619(a)(9) motion to dismiss plaintiff’s complaint for lack of standing. Section 2–619(a)(9) permits involuntary dismissal where “the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim.” 735 ILCS 5/2–619(a)(9) (West 1998). The phrase “affirmative matter” refers to something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint. 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 486 (1994). Lack of standing is an “affirmative matter” that is properly raised under section 2–619(a)(9). 
Cf.
 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 494 (1988) (holding that lack of standing is an “affirmative” defense). An order granting this type of motion to dismiss is given 
de novo
 review on appeal. 
Kedzie & 103rd Currency Exchange, Inc
. 
v. Hodge
, 156 Ill. 2d 112, 116 (1993). Accordingly, we conduct 
de novo
 review of the circuit court’s dismissal of plaintiff’s complaint on the ground of lack of standing and consider whether dismissal was proper as a matter of law.

The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit. The doctrine assures that issues are raised only by those parties with a real interest in the outcome of the controversy. See 
People ex rel. Hartigan v. E&E Hauling
, 
Inc
., 153 Ill. 2d 473, 482 (1992). This court has set forth the general principle that standing requires some injury in fact to a legally cognizable interest in 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 492 (1988). The claimed injury may be actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant’s actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. 
Greer
, 122 Ill. 2d at 492-93. Moreover, in the context of an action for declaratory relief, there must be an actual controversy between adverse parties, and the party requesting the declaration must possess some personal claim, status or right that is capable of being affected by the grant of such relief. 
Greer
, 122 Ill. 2d at 493.

In setting forth the requirements for standing, this court in 
Greer
 rejected federal principles on standing by declining to adopt the “zone-of-interests” test as an additional requirement for standing. 
Greer
, 122 Ill. 2d at 491-92. The zone-of-interests test, which arises in cases where it is alleged that injury is due to the violation of a statute, requires that the interest asserted by the plaintiff lies within the zone of interests sought to be protected by the statute in question. 
Greer
, 122 Ill. 2d at 489. In rejecting the zone-of-interests test, we criticized the test for confusing the issue of standing with the merits of the suit. 
Greer
, 122 Ill. 2d at 492.

Defendants in this case argue that we should adopt the test for standing that was set forth in 
Lynch v. Devine
, 45 Ill. App. 3d 743 (1977), as an additional requirement for standing. We reject the 
Lynch
 test for the same reason we rejected the zone-of-interests test in 
Greer
. The 
Lynch
 test provides that, where the suit alleges injury due to violation of a statute, the doctrine of standing requires that the plaintiff be a member of the class designed to be protected by the statute, or one for whose benefit the statute was enacted, and to whom a duty of compliance is owed. 
Lynch
, 45 Ill. App. 3d at 748. This test is similar to the zone-of-interests test. Both tests require a consideration of the underlying purposes of the statute at issue so as to determine whether the plaintiff was among its intended beneficiaries such that the statute was designed to protect the plaintiff’s interest. Both the zone-of-interests test and the 
Lynch
 test improperly confuse standing with the merits of the underlying suit. For the reason set forth in 
Greer
, we therefore refuse to expand the requirements for standing to include the additional requirements set forth in 
Lynch
.

Having set forth the requirements for standing, we now consider them in light of plaintiff’s complaint. We must determine whether plaintiff’s claimed injury is an injury in fact to a legally cognizable interest. Plaintiff alleges that construction of the dam and reservoir on Sugar Creek violates the Illinois Endangered Species Protection Act by destroying the essential habitat of the least brook lamprey and the Indiana crayfish, thereby eliminating the two species from the area.

The basis of plaintiff’s complaint is the Illinois Endangered Species Protection Act (Act). The Act is designed “to prohibit the possession, taking, disposal, or transport of specimens or products of animals or plants of species in danger of extinction and statewide extirpation, to provide penalties for violation thereof, and to create a Board to perform certain duties relative to the protection of such species and their habitats.” 520 ILCS 10/1 (West 1998). The Act provides that it is unlawful for any person to take or otherwise dispose of any species on the Illinois list of endangered or threatened species without a permit issued by the Department of Natural Resources. 520 ILCS 10/3 (West 1998). The Act, among other things, limits the basis for the issuance of a permit; requires a consultation process between state and local agencies and the Department of Natural Resources regarding any project that may impact Illinois endangered or threatened species; and establishes that anyone who violates a provision of the Act is guilty of a Class A misdemeanor. 520 ILCS 10/4, 9, 11 (West 1998). The Act also imposes an obligation on the Department of Natural Resources to implement a program for the conservation of endangered and threatened species and to adopt rules to implement the Act. 520 ILCS 10/11(a), (c) (West 1998).

The Act, however, does not expressly confer standing on plaintiff to bring this private cause of action. The Act does not contain any language that expressly grants a private cause of action for a violation of the Act, with the exception of allowing the enforcement of the consultation process by a writ of mandamus (520 ILCS 10/11(b) (West 1998)).

Defendants argue that plaintiff lacks standing because plaintiff’s alleged injury is not an injury in fact to a legally cognizable interest. Plaintiff responds that he has standing pursuant to article XI, section 2, of the Illinois Constitution of 1970. Plaintiff argues that this provision grants him a constitutional right to a “healthful environment,” and that the construction of the dam and reservoir on Sugar Creek would infringe on that right because the protection of endangered and threatened species is necessary to the maintenance of a “healthful environment.” Plaintiff therefore contends that the Sugar Creek project results in injury to his legally cognizable interest in a “healthful environment,” which includes the protection of endangered and threatened species.

Defendants respond that plaintiff waived any reliance on article XI, section 2, as a basis for standing because plaintiff failed to specifically raise that argument in his complaint or other pleadings. Defendants note that plaintiff did not raise the applicability of article XI, section 2, as a basis for standing until the circuit court hearing on defendants’ motion to dismiss and plaintiff’s motion for a preliminary injunction. We reject defendants’ claim of waiver. Lack of standing is an affirmative defense, which the defendant bears the burden to plead and prove. 
Greer
, 122 Ill. 2d at 494. Consequently, plaintiff properly raised article XI, section 2, of the Illinois Constitution in response to defendants’ claim of lack of standing.

We now address whether article XI, section 2, of the Illinois Constitution accords plaintiff standing. Article XI of the Illinois Constitution of 1970 is known as the environment article and consists of two sections. Section 1 provides that the “public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.” Ill. Const. 1970, art. XI, §1. Section 2 provides that “[e]ach person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law.” Ill. Const. 1970, art. XI, §2.

In determining whether plaintiff has standing, we must interpret the provisions of article XI. It is well established that interpretation of a constitutional provision begins with the language of the provision. 
Graham v. Illinois State Toll Highway Authority
, 182 Ill. 2d 287, 301 (1998). Where the language is not ambiguous, it will be given effect without resort to other aids for construction. 
Graham
, 182 Ill. 2d at 301. Where, however, the meaning of a provision is not clear from its language, a court may consult the drafting history to ascertain the meaning of the provision. 
Graham
, 182 Ill. 2d at 301; 
Client Follow-up Co. v. Hynes
, 75 Ill. 2d 208, 216 (1979).

The dispute in this appeal concerns whether article XI accords plaintiff standing to maintain an action against defendants to protect the least brook lamprey and the Indiana crayfish on the basis that their destruction violates plaintiff’s right to a healthful environment. At the center of this dispute is the meaning of the term “healthful environment” and the scope of standing afforded to individuals pursuant to article XI, section 2. Plaintiff contends that “healthful environment” includes the health of the least brook lamprey and the Indiana crayfish. In contrast, defendants argue that the term “healthful environment” is limited to an environment conducive to human health.

What article XI means by the term “healthful environment” is not clear from the language itself. It is therefore appropriate to consult the drafting history of article XI to discern the meaning of “healthful environment.” Our analysis of this history leads us to conclude that “healthful environment” was intended to refer to the relationship between the environment and human health. The primary concern of the drafters of article XI was the effect of pollution on the environment and human health. The right to a “healthful environment” was therefore not intended to include the protection of endangered and threatened species. We also conclude that the drafting history of article XI indicates that plaintiff’s standing is limited to providing him with an opportunity to enforce his right to a “healthful environment.”

Sections 1 and 2 of article XI were proposed to the constitutional convention by the General Government Committee as part of that Committee’s Proposal No. 16, which proposed an environment article for the 1970 Constitution. 6 Record of Proceedings, Sixth Illinois Constitutional Convention 693, 695 (hereinafter cited as Proceedings). The Committee’s explanatory report stated that the proposed environment article was designed to address the problem of environmental pollution. 6 Proceedings 696. The Committee sought to resolve the problem of environmental pollution by creating constitutional rights and duties concerning the environment. Particularly significant is the Committee report’s explanation for its use of the term “healthful environment.” The Committee stated:

“The Committee selects the word ‘healthful’ as best describing the kind of environment which ought to obtain. ‘Healthful’ is chosen rather than ‘clean’, ‘free of dirt, noise, noxious and toxic materials’ and other suggested adjectives because ‘healthful’ describes the environment in terms of its 
direct effect on human life
 while the other suggestions describe the environment more in terms of its physical characteristics. A description in terms of physical characteristics may not be flexible enough to apply to new kinds of pollutants which may be discovered in the future.” (Emphasis added.) 6 Proceedings 697-98.

The Committee’s proposal also outlined the right of each person to a “healthful environment” and each person’s ability to enforce that right. This proposal ultimately became section 2 of article XI. The Committee determined that the right to a “healthful environment” is a “fundamental right” and that expression of this right “provides the vehicle for the individual to prosecute a violator.” 6 Proceedings 700. The Committee explained that the standing provision set forth in section 2 was intended to “add practical significance” to the constitutional expression of the individual’s right to a “healthful environment.” (Emphasis omitted.) 6 Proceedings 702. The Committee further explained that, in drafting section 2, it recognized that individuals should “not be denied the opportunity to seek relief when so fundamental a right as that to a healthful environment is involved.” 6 Proceedings 702. The Committee nevertheless limited the scope of section 2 as follows:

“The Committee emphasizes that this Section [2] affords individuals the opportunity to seek relief. It wants to be very clear that it does 
not
, by this Section (or by any Section in this Article for that matter) create or establish a new remedy. Nor does this Section assume the individual’s ability to prove a violation of his right. It merely declares that individuals have ‘standing’ to assert violations of his right.

***

Because the wrong here has reached crisis proportions and because it affects individuals in so fundamental a way, the Committee is of the view that the ‘special injury’ requirement for standing is particularly inappropriate and ought to be waived. Section [2], therefore, allows the individual the opportunity to prove a violation of his right even though that violation may be a public wrong, or one common to the public generally.

***

It must be emphasized that allowing standing does 
not
 assume proof of the claim. *** Section [2] merely affords the individual the opportunity to prove his claim and to convince the court or administrative body that he is entitled to relief. This Section does 
not
 create any new remedies. ***

* * *

The term ‘subject to reasonable limitation and regulation by law’ is included to emphasize not only the leadership function the Committee envisions for the Legislature in this package but also the power of the General Assembly to reasonably limit and regulate the declared ability of the individual to enforce his right. The Committee conceives that a reasonable exercise of this power would include a law which required the individual to file any environmental claims with the Attorney General and that only if he did 
not
 act could the individual file suits; a law creating an administrative agency in which all claims against pollutors [
sic
] would have to be filed, with judicial review provisions; the creation of a special court, such as traffic court, which would handle all pollution suits; or a law requiring that all pollution suits be brought by the Attorney General with the individual’s right to intervene.” (Emphasis in original.) 6 Proceedings 702-05.

 This report evinces the intent of the General Government Committee in drafting what became article XI of the 1970 Constitution. The Committee intended to address environmental pollution and to encourage an environment conducive to human health. The Committee also intended to provide individuals with the opportunity to combat environmental pollution. The Committee sought to achieve this result by giving each person standing to bring suit to enforce the right to a healthful environment and restricted such standing by making it subject to limitations and regulations imposed by the General Assembly. It was the intent of the committee to broaden the law of standing by eliminating the traditional special injury prerequisite for standing to bring an environmental action. As such, section 2 gives standing to an individual for a grievance common to members of the public. The committee comments also indicate that section 2 is limited to granting standing and does not create any new causes of action. See also 
City of Elgin v. County of Cook
, 169 Ill. 2d 53, 85 (1995) (holding that section 2 does not create any new causes of action).

Further support for this interpretation of article XI is found in the comments made during the discussion of article XI at the constitutional convention. In response to an inquiry about what was meant by the term “healthful environment,” Delegate McCracken stated that the Committee was concerned with “the essence of what people were complaining about, and that was damage to their health and damage to the health of future generations,” and that the term was restricted “to the field of human concern.” 4 Proceedings 2997. Delegate McCracken further indicated that the environment article was not attempting to cover aesthetics. 4 Proceedings 2998. The following colloquy took place between Delegate Woods and Delegate Leahy regarding the scope of a “healthful environment:”

“MR. WOODS: Did you consider that inadequate food and medicine contributes to an unhealthful environment, or poor housing?

MRS. LEAHY: No, we did not consider those factors in arriving at this article.

MR. WOODS: So that your concern was centered primarily on the pollution aspects of health?

MRS. LEAHY: That is correct.

MR. WOODS: Would it be your thought, or the thought of any other member of the committee that bad roads or inadequate food and housing, medicine, and so forth would be excluded or included in the purview of this article?

MRS. LEAHY: I’m sure we meant them to be excluded.

MR. WOODS: It’s the committee’s intention that they would be excluded?

MRS. LEAHY: That is correct.

MR. WOODS: So that, seriously, you’re really looking at a pollution control with all of its ramifications–air, water, land pollution and so forth. That is what you were looking at–noise pollution, too.

MR. LEAHY: In connection with health.” 4 Proceedings 3002.

In addition to discussing the term “healthful environment,” the drafters also discussed the issue of standing given to individuals by article XI, section 2. Delegate McCracken stated that section 2 provides private citizens standing, but does not create a new remedy. 4 Proceedings 2997. The foregoing comments, like the Committee report, show that the framers of the 1970 Constitution viewed article XI as a response to the issue of environmental pollution and its effect on human health, and as granting standing to an individual to enforce the right to a “healthful environment.” The protection of endangered and threatened species does not fall within the intended scope of a person’s right to a “healthful environment.” Therefore, article XI does not encompass the protection of endangered and threatened species.

Plaintiff nonetheless contends that another comment made in the Committee report reveals that the term “healthful environment” was intended to include the preservation of endangered and threatened species. Plaintiff refers to an instance where the Committee stated: “The word ‘healthful’ is meant to describe that quality of physical environment which a reasonable man would select for himself were a free choice available ***. The word ‘environment’ means the aggregate of all conditions affecting the existence, growth and welfare of organisms.” 6 Proceedings 701. Plaintiff takes these comments out of context. The Committee explained just prior to the aforementioned language that, in providing for a right to a “healthful environment,” it gives “recognition to the problem of environmental pollution as one of fundamental significance.” 6 Proceedings 700. The Committee also explained that it selected the word “healthful” as best describing the kind of environment that ought to be the objective. 6 Proceedings 697. Thus, the comments referred to by plaintiff do not support plaintiff’s position that “healthful environment” includes conditions affecting threatened and endangered species.

We also reject the argument raised by 
amici curiae
 that the protection of endangered and threatened species is necessary for a “healthful environment.” 
Amici
 contend that endangered and threatened species serve an important role in human health in the areas of medicine and economics, and as a food supply. Although this may be true, 
amici
 fail to recognize that “healthful environment,” as that term is used in article XI, section 2, arose in the context of addressing the problem of environmental pollution. In view of the intention of the drafters of article XI, section 2, there is no basis for expanding the scope of “healthful environment” to include the preservation of endangered and threatened species.

We therefore conclude that plaintiff does not have standing under article XI, section 2, of the Illinois Constitution. Plaintiff’s interest in preserving the least brook lamprey and the Indiana crayfish is not a legally cognizable interest for purposes of standing because it is not included in plaintiff’s constitutional right to a “healthful environment,” as that term is used in article XI, section 2. Thus, plaintiff cannot rely on article XI, section 2, as a basis for standing to sue defendants to enforce the Act.

As a final matter, plaintiff argues that, even if article XI, section 2, is not applicable, he nevertheless has standing to bring this action. Plaintiff points to the allegations in his complaint regarding the harmful impact of the reservoir and dam project on plaintiff’s interest as a naturalist, including his use of Sugar Creek for food gathering, recreation, spiritual and educational activities, and on his lifestyle which he claims is “dependant on” Sugar Creek. Plaintiff contends that these interests constitute legally cognizable interests for purposes of standing. We disagree. This court has held that a party cannot gain standing merely through a self-proclaimed interest or concern about an issue, no matter how sincere. 
Landmarks Preservation Council  v. City of Chicago
, 125 Ill. 2d 164, 175 (1988).

Accordingly, we hold that plaintiff lacks standing to pursue an action against defendants. Having determined a lack of standing, there is no reason to examine whether plaintiff has stated a cause of action.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court and affirm the circuit court’s dismissal of plaintiff’s complaint for lack of standing.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICE HARRISON, dissenting:

Contrary to my colleagues, I believe that section 2 of Article XI of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XI, §2) does authorize Dr. Glisson to bring this action to enforce the provisions of the Illinois Endangered Species Protection Act (520 ILCS 10/1 
et seq.
 (West 1998)).

A proper analysis of section 2 should begin with the long-recognized principle that the meaning of any given constitutional provision depends on the common understanding of the citizens who, by ratifying the Constitution, “gave it life.” 
Kalodimos v. Village of Morton Grove
, 103 Ill. 2d 483, 492 (1984). To assess that understanding, we must give effect to the plain language of the Constitution, for it is the language itself which provides the best evidence of what the drafters intended to convey to the citizens for ratification. 
Cincinnati Insurance Co. v. Chapman
, 181 Ill. 2d 65, 77 (1998).

The plain language of section 2 states that “[e]ach person has the right to a healthful environment” and that “[e]ach person may enforce this right against any party, governmental or private, through appropriate legal proceedings.” Ill. Const. 1970, art. XI, §2. Nothing in this language suggests in any way that the right to bring an action to enforce the right to a healthful environment is restricted to cases of environmental pollution. That being so, we have no authority to create such a limitation ourselves. Our construction of section 2 is guided by the same principles applicable to the construction of statutes (
Nevitt v. Langfelder
, 157 Ill. 2d 116, 134 (1993)), and those principles dictate that where the language used is clear and unambiguous, we must give it effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express (
Garza v. Navistar International Transportation Corp
., 172 Ill. 2d 373, 378 (1996)).

My colleagues’ resort to legislative history is inappropriate. Justice Miller explained the principle clearly some years ago. He wrote that where the language of a constitutional provision is clear,

“we should have no occasion to consult the convention debates of th[at] provision[ ]. The same rules of construction applicable to statutes apply as well to the constitution [citations], and a basic rule of statutory construction forbids a court to canvass legislative history for evidence of legislative intent if the meaning of a provision can be determined from its text.” 
Nevitt
, 157 Ill. 2d at 134 .

Altering a watercourse in a way that will eradicate species of threatened or endangered wildlife clearly has obvious and important implications for the healthfulness of the environment. To dismiss those implications, as my colleagues do, is to ignore the substantial and well-documented importance of biodiversity to human welfare. The brief filed by 
amici curiae
 includes a passage from Raymond Dasman’s work, Wildlife and America (Council on Environmental Quality 1978), which makes a compelling point regarding the importance of species preservation:

“[M]edical science now makes use of species once considered worthless–that might easily have been allowed to become extinct on the grounds that they were ‘good for nothing.’ The present use of 
Penicillium
 mold (antibiotics), Rhesus Monkeys (blood groups), sea urchins (embryology), cinchona bushes (quinine), 
Xenopus
 toads (pregnancy tests), 
Strychnos
 vines (curare), foxgloves (digitalis), and 
Rauwolfia 
(hypertension), could not have been predicted (except perhaps by practitioners of folk medicine, who were familiar with the curative properties of many of these species). Similar contributions are made by wild species to agricultural production, to pest control, and to the development of new domestic varieties. Each species is a storehouse of irreplaceable genetic material whose loss we cannot afford.”

We protect threatened and endangered species because, in so doing, we protect ourselves and the welfare of the Illinoisans who will inherit this land when we are gone. It is our obligation and it is an obligation I believe that most Illinoisans believed they were assuming when they ratified section 2 of article XI of our Constitution. Under any fair reading, that provision cannot be confined to industrial pollution. To suggest, as my colleagues do, that the only environmental threats implicated by our Constitution are those that emanate from a smoke stack, drain pipe or car exhaust ignores wisdom, science and the plain language of the law.

Under section 2 of article XI, “every person” has the right to bring an enforcement action. Whether Dr. Glisson has a personal stake in the outcome is therefore legally irrelevant. I note, however, that his concern over the fate of the Least brook lamprey and Indiana crawfish is more than just abstract or theoretical. He lives in the immediate area of the proposed dam project and has included allegations in his complaint demonstrating the adverse effects the project will have on him personally. Under these circumstances, his interest in the matter is certainly adequate “to assure sufficient sharpness in defining the issues so that the court may be aided in deciding the case.” 
Kluk v. Lang
, 125 Ill. 2d 306, 315 (1988). That, in the end, is the whole purpose of the standing requirement. 
Kluk
, 125 Ill. 2d at 315.

For the foregoing reasons, I would hold that section 2 of article XI authorizes private citizens to bring suit to enforce the requirements of the Illinois Endangered Species Protection Act and that Dr. Glisson has standing to initiate such a proceeding. I therefore dissent.

FOOTNOTES
1:     
1
The Illinois Department of Conservation was the first state agency charged with implementing the Illinois Endangered Species Protection Act. 520 ILCS 10/2, 11 (West 1994). The agencies of the State of Illinois have since been reorganized, and the Illinois Department of Natural Resources now has the authority to adopt rules to implement the Act. 520 ILCS 10/2, 11 (West 1998).