**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200280-U

Order filed May 10, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| VIVIAN KING, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-20-0280 |
| | ) | Circuit No. 19-CH-278 |
| WILL COUNTY, ILLINOIS, and HEALTH | ) | |
| CARE SERVICE CORPORATION, an Illinois | ) | |
| Corporation, | ) | Honorable |
| | ) | Roger D. Rickmon, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Presiding Justice McDade concurred in the judgment.
Justice Schmidt specially concurred.

_____

**ORDER**

¶ 1     Held:   Plaintiff taxpayer did not have standing to bring claims based upon defendants having formed an illegal contract with each other that was paid for with Will County's public funds where plaintiff failed to sufficiently plead the illegality of the contract and, thus, failed to plead that she had suffered any harm resulting from defendants' conduct.

¶ 2     Plaintiff, Vivian King, filed a second amended complaint against defendants, Will County, Illinois, and Health Care Service Corporation. In her second amended complaint,

plaintiff alleged defendants formed an illegal contract with each other for which Will County used public funds supplied by taxpayers like her. The trial court dismissed the five-count second amended complaint with prejudice on the grounds that the plaintiff's claims were derivative actions for which Will County was the real party in interest so that only the State's Attorney could bring the action. Plaintiff appeals, arguing that the trial court erred in dismissing her complaint with prejudice because her claims were direct taxpayer actions and she had adequately plead her claims. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        In her second amended complaint, plaintiff alleged as follows. Health Care Service Corporation d/b/a Blue Cross/Blue Shield of Illinois (HCSC) is an Illinois mutual insurance company licensed by the State of Illinois to provide health care insurance and to act as a third-party administrator (TPA) for health care benefit plans throughout Illinois. HCSC was retained by Will County to act as the TPA of its self-funded local government employee health care plans. These plans paid HCSC for its services as a TPA with payment coming from public funds supplied to Will County by plaintiff and other taxpayers.

¶ 5        Plaintiff additionally alleged that the TPA services provided by HCSC included the processing and payment of claims submitted to HCSC healthcare by providers for charges incurred by the employees of Will County. Under the agreement between HCSC and Will County, after HCSC processes and initially pays the bills submitted by the providers, HCSC submits the itemized bills to Will County for reimbursement. Will County then reimburses HCSC for the amount listed on the bills "plus a small but contractually agreed upon amount for HCSC's administrative services as set by the contract between HCSC and Will County." The amount HCSC indicates is paid to the provider exceeds the actual amount HCSC pays, or is

ultimately required to pay, the providers. The difference between the amount HCSC receives as reimbursement from Will County and the amount HCSC ultimately pays to the providers is retained by HCSC as additional compensation for its services. HCSC's "additional compensation" is based on HCSC's "separate financial arrangements" with certain providers, and HCSC does not share these additional benefits with Will County. When HCSC is acting as a TPA for Will County, it does not disclose to Will County or to the public that it is taking an unlimited and undisclosed amount of additional compensation, so it is not possible for the public or Will County to determine the actual amount of compensation being paid to HCSC out of Will County's public funds. It is HCSC's position that these separate contractual arrangements with its providers are confidential and not subject to disclosure.

¶ 6        Plaintiff further alleged that pursuant to Article VIII, section 1 of the Illinois Constitution (Ill. Const. 1970, art VIII, §1)[1] and the Local Records Act[2] (50 ILCS 205/1 *et seq*. (West 2018)), the terms and the details of compensation paid to a private vendor by a unit of local government must be disclosed on the face of the agreement and must be readily available for review by the public. Plaintiff additionally alleged that the agreement between HCSC (a private vendor) and Will County (a unit of local government) must also comport with the "prior appropriations rule," which requires that the amount that Will County intends to pay a private vendor under a contract

_____

[1] Article VIII, section 1 of the Illinois Constitution provides: "(a) Public funds, property or credit shall be used only for public purposes. (b) The State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance. (c) Reports and records of the obligation, receipt and use of public funds of the State, units of local government and school districts are public records available for inspection by the public according to law." Ill. Const. 1970, art VIII, §1.

[2] The Local Records Act provides that reports and records of the obligation, receipt, and use of public funds of the units of local government and school districts are public records available for inspection by the public. 50 ILCS 205/3a (West 2018). Records and reports prepared or received on or after July 1, 1984, are covered under the provisions of the Illinois Freedom of Information Act. 50 ILCS 205/15 (citing 5 ILCS 140/1 *et seq*. (West 2018)).

3

must be set as a fixed amount or the method of calculation for the amount to be paid to the vendor must be disclosed. Plaintiff also alleged that Will County entered into a contract with HCSC that was in derogation of Illinois law, making the contract void *ab initio*.

¶ 7  In count I, plaintiff sought a declaratory judgment. Plaintiff alleged that under Illinois law, taxpayers have a right to bring a direct action to declare an agreement between a unit of local government and a private vendor to be in derogation of the law and to have that contract declared void *ab initio*. Plaintiff requested that the trial court declare that the contracts between HCSC and Will County for TPA services (entered into from 2009 through the present) were void *ab initio*.

¶ 8  In count II, plaintiff sought injunctive relief, in which she alleged that she, as a taxpayer, had a protectable interest in the public funds used to pay HCSC. She contended that injunctive relief was necessary to avoid ongoing and irreparable harm caused by the improper and continued taking of public funds from Will County each day pursuant to its illegal and void contract with HCSC. She alleged that as a result of the improper taking of public funds, other public services were limited or not provided due to the limited amount of funds available. Plaintiff contended that an injunction was necessary for the funds being improperly paid to HCSC to be allocated to other public needs. Plaintiff alleged that a remedy at law was not adequate because the public was sustaining a loss on an ongoing basis through the improper diversion of substantial sums to HCSC in an unknown and unlimited amount. Plaintiff contended that the agreement(s) at issue were void *ab initio*. Plaintiff requested that the trial court enjoin the continuation or enforcement of the contracts between the defendants and bar HCSC from continuing to take any compensation or other payments for its services under these agreement(s).

¶ 9        Plaintiff also asserted claims of unjust enrichment (count III) and assumpsit (count IV) in which she sought restitution for all compensation HCSC received pursuant to the alleged illegal contract(s) with Will County. She additionally asserted an accounting claim (count V), alleging that in order to "address and quantify the amount of the loss of public funds and the money improperly received by HCSC," an accounting was necessary.

¶ 10       Defendant, Will County, filed a motion to dismiss pursuant to section 2-619(a)(2) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(2) (West 2018) (plaintiff does not have "the legal capacity to sue")), arguing that plaintiff lacked standing to assert her claims.[3] Will County also contended that there had been an actual proper prior appropriation of funds for the payment of HCSC's services, so that a dismissal was proper pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018) ("the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim")). In support of that contention, Will County attached to its motion to dismiss documentation of Will County's budget for various fringe benefits, including for "Health Ins. Benefits" for the years 2009 through 2019, which Will County indicated included its appropriation for HCSC's TPA services. Will County also contended, among other things, plaintiff did not allege that HCSC was paid more funds than had been appropriated and, thus, plaintiff could not claim that she was liable to pay more taxes.

¶ 11       Defendant, HCSC, filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). HCSC argued that plaintiff's second amended complaint was a derivative action in which plaintiff primarily sought restitution for monies paid

---

[3] Generally, the legal capacity to sue or be sued refers to the status of the party, for example as being incompetent or a minor, whereas standing requires that a party has a real interest in the action and its outcome. *A Plus Janitorial Co. v. Group Fox, Inc.*, 2013 IL App (1st) 120245, ¶ 15. Lack of standing is an affirmative matter that is properly raised under section 2-619(a)(9) of the Code. *Id.*

to HCSC by Will County and that plaintiff's claims should be dismissed for lack of standing. HCSC contended that Will County was the real party in interest (with the State's Attorney having exclusive authority to prosecute any such action for restitution) and that plaintiff failed to plead any personal liability to replenish revenues depleted by the alleged illegal government action. HCSC additionally argued that each count of the second amended complaint was insufficiently pled so that a dismissal was proper under section 2-615 of the Code. Among other contentions, HCSC argued plaintiff had not sufficiently plead a basis upon which to consider the agreement between HCSC and Will County void.

¶ 12    In support of its motion to dismiss, HCSC attached a document entitled, "Will County Resolution 18-204" (approved on July 19, 2018), under which the Will County Board authorized the Will County Executive to renew Will County's contract with HCSC to administer certain Will County health plans. The resolution indicated that Will County hired a consultant to market, negotiate, and manage the renewal of these group benefits, and, based on those results, certain group benefits renewals were recommended, effective January 1, 2019, which included "the designation of Blue Cross Blue Shield of Illinois and HMO Illinois for the County's group indemnity/PPO and HMO plans, inclusive of *** administrative services only ('ASO') services." HCSC also attached to its motion to dismiss the "Administrative Service Agreement" (Agreement) executed by HCSC and Will County, effective January 1, 2019.

¶ 13    In response to the motions to dismiss, plaintiff argued that she had sufficiently alleged that there had not been a prior appropriation for TPA services, so the contract between defendants was void *ab initio*. She also contended that pursuant to the Illinois Constitution (Article VIII, Section 1) and Illinois law (the Freedom of Information Act as the successor to the Local Records Act), Will County was required to appropriate a specific sum of money in order to

spend taxpayer funds. Plaintiff contended that there had been a misappropriation of funds in relation to the total compensation received by HCSC, based on its contract with Will County, where the total amount of HCSC's compensation was not disclosed to Will County in any way. Plaintiff contended that without defendants' contract requiring such a disclosure, it was void *ab initio*. Plaintiff also argued that the document attached to Will County's motion to dismiss was not sufficient to show that a proper appropriation was made for TPA services and that a proper appropriation could not be made where Will County was not able to discern how much compensation it was actually paying to HCSC. Plaintiff additionally argued that her claim was a direct taxpayer action, for which she had standing to bring.

¶ 14    In its reply, Will County acknowledged that "the courts have held that local governments have a duty to itemize their budgets" to enable taxpayers to know how tax dollars are used and to prevent expenditures for a different purpose than the one designated in the appropriation. Will County argued, however, that a general designation is sufficient. Will County also contended that all public funds spent under the TPA contract were ascertainable and supported by the terms of the contract. Will County also noted there was no legal requirement for its contract with HCSC for TPA services to indicate amounts at which HCSC secured goods or services from third-party providers.

¶ 15    HCSC contended in its reply that plaintiff failed to plead a taxpayer claim because Will County was the real party in interest regarding any restitution. HCSC also contended that plaintiff failed to plead facts that she, as a taxpayer, would be required to replenish public funds. HCSC further contended that although taxpayers have the right "to seek injunctive relief against a government entity" to prevent the ongoing misuse of public funds, there was no authority that allowed direct taxpayer actions against third parties to recover damages. HCSC additionally

7

argued that the Illinois Constitution did not require that its profits associated with its TPA contract with Will County be disclosed and that the TPA contract sufficiently disclosed the compensation HCSC was to be paid from Will County.

¶ 16        The trial court entered a written order, indicating that it found "the complaint plead is actually a direct action and not a derivative action," and that only the State's Attorney was authorized to file that type of action. The trial court dismissed the complaint with prejudice. HCSC filed a motion to correct the order, and on July 9, 2020, the trial court entered an amended order indicating it found "the complaint plead is actually a derivative action and not a direct taxpayer action."

¶ 17        Plaintiff appealed.

¶ 18        II. ANALYSIS

¶ 19        On appeal, plaintiff argues that the trial court erred in dismissing her complaint with prejudice. Specifically, plaintiff argues that the trial court erred in dismissing her complaint pursuant to section 2-619 of the Code because she had standing to bring a direct taxpayer action. Plaintiff further contends that her complaint sufficiently alleged that the TPA contract between Will County and HCSC was not authorized by a prior appropriation in violation of Article VIII of the Illinois Constitution and section 6-1005 of the Counties Code (55 ILCS 5/6-1005 (West 2018)). HCSC argues that the trial court did not err in dismissing plaintiff's complaint for lack of standing because plaintiff did not allege a cognizable taxpayer action and plaintiff did not have standing to pursue claims on behalf of Will County. HCSC also argues that plaintiff's allegations were insufficient to state a claim.[4]

---

[4] Will County did not file an appellee's brief on appeal.

8

¶ 20 Here, the trial court dismissed plaintiff's claims based on what appears to be its finding of a lack of plaintiff's standing where the trial court concluded that "the complaint plead is actually a derivative action and not a direct taxpayer action." Under section 2-619(a)(9) of the Code, an involuntary dismissal of an action is proper where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). Lack of standing is an affirmative matter that is properly raised under section 2-619(a)(9) of the Code. *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999). An involuntary dismissal order based on lack of standing presents a question of law that we review *de novo*. *Id.* at 220-21; *Lyons v. Ryan*, 201 Ill. 2d 529, 534 (2002).

¶ 21 "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit," assuring that issues are raised only by parties with a "real interest in the outcome of the controversary." *Glisson*, 188 Ill. 2d at 221. Standing requires some injury in fact to a legally cognizable interest. *Id.* "The claimed injury may be actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Id.*

¶ 22 "A 'taxpayer action' is brought by private persons in their capacity as taxpayers, 'on behalf of themselves and as representatives of a class of taxpayers similarly situated within a taxing district or area, upon a ground which is common to all members of the class, and for the purpose of seeking relief from illegal or unauthorized acts of public bodies or public officials, which acts are injurious to their common interests as such taxpayers.' " *Scachitti v. UBS Financial Services*, 215 Ill. 2d 484, 493 (2005) (quoting 74 Am. Jur. 2d *Taxpayers' Actions* § 1 (2001)). Taxpayers have an equitable right to sue in order to protect their interests in public funds. *Egidi v. Town of Libertyville*, 218 Ill. App. 3d 596, 601 (1991). The right of a taxpayer to

bring suit is based upon a misappropriation of general public funds and upon the proposition that taxpayers have equitable ownership of the funds and are liable to replenish the treasury in the event of a misappropriation. *Id.* (plaintiff's allegations that he was a taxpayer and a resident in Libertyville Township and that the Township wrongfully spent funds to purchase land that it did not have the authority to purchase, which resulted in an misappropriation of funds, were sufficient allegations that the public had suffered injury). "Misappropriation and wrongful expenditure of that revenue are direct and blatant assaults on the taxpayers." *Id.*

¶ 23        Our supreme court has stated:

" 'It has long been the rule in Illinois that citizens and taxpayers have a right to enjoin the misuse of public funds, and that this right is based upon the taxpayers' ownership of such funds and their liability to replenish the public treasury for the deficiency caused by such misappropriation. The misuse of these funds for illegal or unconstitutional purposes is a damage which entitles them to sue.' " *Scachitti*, 215 Ill. 2d at 494 (quoting *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 160 (1956)).

¶ 24        On the other hand, a "taxpayer derivative action" is an action brought by a taxpayer on behalf of a local governmental unit to enforce a cause of action belonging to the local governmental unit. *Id.* "The claimed injury [in a taxpayer derivative action] is not personal to the taxpayers, but rather impacts the governmental entity on whose behalf the action is brought." *Id.* (quoting *Lyons*, 201 Ill. 2d at 535).

¶ 25        Under section 6-1002 of the Counties Code, proposed expenditures approved by the county board "shall specify the several objects and purposes of each item of current expenses." 55 ILCS 5/6-1002 (West 2018). With some exceptions (leasing buildings and paying charges

10

upon the county imposed by law), "no contract shall be entered into and no obligation or expense shall be incurred by or on behalf of a county unless an appropriation therefor has been previously made." 55 ILCS 5/6-1005 (West 2018). Additionally, "neither the county board nor any one on its behalf shall have power, either directly or indirectly, to make any contract or do any act which adds to the county expenditures or liabilities in any year anything above the amount provided for in the annual budget for that fiscal year." *Id.*

¶ 26 Here, plaintiff alleged in her second amended complaint that the prior appropriation rule "require[d] that the amount a unit of local government intends to pay a private vendor under a contract must fix the amount or method of calculation to be paid to the vendor," but plaintiff has provided no legal support for this specific contention. As noted above, the plain language of the Counties Code prohibits expenditures above the amount provided for in the annual budget, but there is no such allegation in plaintiff's complaint that Will County incurred any obligation in excess of the annual budget pursuant to the TPA contract. Although plaintiff seems to allege that Will County's contract with HCSC indirectly allowed for added expenditures for TPA services, she did not allege that Will County incurred any obligation in excess of the annual budget. See *id.*

¶ 27 In so far as plaintiff claims that her complaint alleges that Will County's appropriation for "Health Ins[urance] Benefits" did not encompass an appropriation for TPA services, it does not appear that her complaint contained any such allegations. It was not until plaintiff filed her brief on appeal that she asserted this claim. Plaintiff had argued in her response to defendants' motions to dismiss that the document attached to Will County's motion to dismiss (Will County's approved budget) was not sufficient to show that an appropriation was made for TPA services, but she did not request to amend her complaint to allege that the appropriation made for "Health

11

Ins[urance] Benefits" lacked sufficient specificity to include Will County's expenditures for TPA services provided by HCSC.

¶ 28    "A plaintiff can sustain a cause of action only where he or she has suffered some injury to a legal right, so that harm caused by the defendant's conduct is an essential element of every cause of action." *Lutkauskas v. Ricker*, 2015 IL 117090, ¶¶ 29-40 (2015). Allegations that a plaintiff has suffered an injury resulting from the defendant's action is both a pleading requirement and a prerequisite for standing. *Id.* "Taxpayer standing is narrow doctrine permitting a taxpayer the ability to challenge the misappropriation of public funds." *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 29 (citing *Scachitti*, 215 Ill. 2d at 494).

¶ 29    Here, as discussed above, plaintiff failed to sufficiently allege that the monies paid to HCSC from Will County's public funds were the result of an illegal contract or unauthorized spending. Consequently, plaintiff's allegations do not establish that Will County misappropriated funds in its dealings with HCSC. Plaintiff, therefore, did not have standing to bring what she contends was a direct taxpayer action where she, as taxpayer of Will County, did not suffer an injury resulting from defendants' actions. See *Scachitti*, 215 Ill. 2d at 493-94; see also *Marshall v. County of Cook*, 2016 IL App (1st) 142862, ¶ 16 (without allegations that the plaintiff will be liable to replenish public funds improperly depleted, or some other pecuniary loss, a taxpayer has no legally cognizable interest in the outcome of a case to support standing). We, therefore, affirm the trial court's dismissal of plaintiff's second amended complaint with prejudice.

¶ 30                                III. CONCLUSION

¶ 31    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 32    Affirmed.

¶ 33    JUSTICE SCHMIDT, specially concurring:

12

¶ 34 In both the second amended complaint and on appeal, the gravamen of plaintiff's argument is that without knowing the profit margin HCSC enjoys on the payments from Will County the contract between the two is illegal and void. I write separately to note the frivolous nature of this claim.

¶ 35 As noted above, plaintiff's counsel both in the lower court and on appeal failed to advance legal support for the contention that a private vendor is required to disclose the profit realized from payments made by a governmental entity. See *supra* ¶ 26. Counsel failed to cite this elusive legal authority because none exists. Instead, in obfuscation, counsel cites to the Illinois Constitution and the Local Records Act in a conclusory fashion without explaining how these authorities provide support. See *supra* ¶ 6. Even if there were standing to proceed, the argument as presented by plaintiff is specious and teeters on a razor's edge of deserving the application of *sua sponte* sanctions. See Ill. S. Ct. R. 375 (eff. Feb. 1, 1994) (allowing sanctions on the court's own initiative when deemed appropriate).

¶ 36 At oral arguments, counsel for plaintiff attempted to distinguish an analogy comparing the contractual agreement between HCSC and Will County to that of a contract between Will County and a construction company concerning a road project. Despite plaintiff's argument to the contrary, there is no practical difference between the two agreements.

¶ 37 For example, Company X bids on a road project and plans to subcontract out the entirety of the project, never setting foot on the jobsite. The company established pricing agreements with its subcontractors prior to bidding on the road project. Is Company X required to disclose the profit margin it enjoys on the payments made by the County to build the road? No.

¶ 38 The result is the same if the company were to win the bid first and then approach subcontractors, negotiating rates to maximize profits. The result remains the same still if the

13

County were to hire the construction company as a third-party administrator of its road projects where the company contractually agrees to share with the County the discounts negotiated with subcontractors up to a percentage, pocketing the rest of the discount as profit.

¶ 39    Lacking any legal support, plaintiff's argument is best directed to the legislature where she is free to advocate her position in furtherance of public policy. This will likely need to be done without the assistance of her attorneys now that the prospect of a common fund to draw reasonable attorney fees from has evaporated.