NOTICE
Decision filed 04/29/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250589-U

NO. 5-25-0589

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| LORI STEVENS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 25-OP-190 |
| | ) | |
| LAWRENCE HARPER, | ) | Honorable |
| | ) | Maurché H. Belk, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's grant of petitioner's plenary stalking no contact order was not against the manifest weight of the evidence.

¶ 2    Petitioner, Lori Stevens, filed a verified petition for stalking no contact on February 28, 2025, before the circuit court of St. Clair County. The court issued a default order on April 8, 2025. Respondent, Lawrence Harper, filed a motion to vacate the default order on May 7, 2025. The court granted the motion to vacate and heard the petition on June 25, 2025. The court granted the stalking no contact order on the same date. Respondent appeals, arguing first that the trial court's denial of respondent's motion for directed verdict was an abuse of discretion. Respondent also argues that the trial court's granting of the stalking no contact order was against the manifest weight of the evidence. For the reasons that follow, we disagree and affirm.

1

¶ 3                               I. BACKGROUND

¶ 4     The record established that petitioner, Lori Stevens, resided in Dupo, Illinois, with her stepchildren, Brianna Duck and Casey Duck. Petitioner's husband, Randy Duck, was the father of Brianna and Casey. Randy had custody of the children. Randy died on February 23, 2025.

¶ 5     Respondent, Lawrence Harper, was the husband of Brianna and Casey's biological mother, Crystal Harper. In 2015, respondent pleaded guilty to two counts of statutory sodomy against Brianna when she was a minor child. Following Randy's death on February 23, 2025, respondent attempted to contact Brianna and Casey. The court held a hearing on petitioner's petition for stalking no contact on June 25, 2025. The following evidence was adduced at the hearing.

¶ 6     Petitioner testified that she lived on Louisa Avenue in Dupo, Illinois. Petitioner testified that Randy passed away on February 23. Petitioner testified that she had not seen respondent since the court hearings until he drove by her home on February 26. Petitioner stated:

> "Brianna was in the yard, and she started screaming, Mom, that's him; that's him; that's him. I opened the door and they were creeping up in front of the house at the stop sign sitting there. And after a few moments I yelled and said, Get your butt out of here, and then they drove off."

Petitioner testified that respondent was 20 or 25 feet away, and Brianna was frightened. Petitioner contacted the local police department. She reported that respondent drove by the home. She had no other contact with him.

¶ 7     Brianna also testified. Brianna observed respondent in a white SUV at a stop sign in front of the home. Brianna testified that she was in the yard, and she observed respondent "in his vehicle by the stop sign." Brianna felt "intimidated, scared, and uncomfortable." Brianna testified that she was fearful of respondent.

2

¶ 8    Brian Levin, the school assistant principal, testified that Crystal came to the school and asked to see Casey. Crystal advised that "she would like to remove her from the school" or to "pick her up from school." Casey was not at school that day, and Crystal left. Levin observed Crystal leave, and noted that she was "picked up" in a white SUV.

¶ 9    Cameron Cleveland, a patrolman for the Dupo Police Department, next testified. Officer Cleveland testified that he met with Crystal and respondent at the police station. Crystal wanted to "talk to her child." Crystal asked the police to go to the home to retrieve the child. Following the conversation, Sergeant Fulkerson contacted the Department of Children and Family Services and the state's attorney's office.

¶ 10    Counsel for respondent moved for a "directed judgment." Counsel argued that petitioner only established a single incident on February 26. Counsel argued that because there was a single incident, petitioner failed to establish the threshold of two instances.

¶ 11    In response, petitioner argued:

"[T]his man was a convicted felon, a sex offender, and he was in Dupo, Illinois where he is not a resident. Resident of Missouri. He's in Illinois. And I believe the Court could infer from the evidence that Crystal and Lawrence Harper were in Dupo for the purpose of getting possession of the minor child. And whether the principal could identify the person in the white SUV later the same—that day they're in the SUV with the police together, Lawrence and Crystal, I think that is not an improper inference from that evidence showing that there were two incidents, one at the school and one at the house."

¶ 12    Counsel for petitioner argued that respondent drove past the home and was within 20 feet of the victim of his sexual offense conviction. Counsel also noted that Crystal and respondent then

went to the police station in an effort to go to the home to "either pick up the child or make contact with that minor child." Thus, petitioner contended that there were three incidents that would establish the basis for the protective order. Following argument of the parties, the trial court denied the motion for directed judgment.

¶ 13    Respondent testified. He denied driving by petitioner's home on February 26. Respondent testified that he and his wife, Crystal, were looking for the police department "to try to contact her youngest daughter, Casey, she wasn't at the school, she was told, and so we had to go to the police department to try to find an officer to further help us to—for her to make contact with her." Respondent clarified that he and Crystal went to her attorney's office. They then went to the school.

¶ 14    Respondent testified that he pulled into the school parking lot, dropped Crystal off, and left. He waited in a parking lot down the street and waited for Crystal to contact him that she was "done." Crystal advised respondent that Casey was not at school, and they returned to the police station. Respondent testified that he was on parole, and he could interact with "anybody" he chose, except for Brianna Duck, so long as he was chaperoned by Crystal.

¶ 15    Following the close of evidence, petitioner argued that respondent drove Crystal to the school with the intention of picking up Casey and removing her from the state of Illinois. Petitioner also argued that the evidence established that respondent drove by petitioner's home where Brianna and petitioner observed him. Petitioner argued that the evidence established that respondent and Crystal then went to the police station to attempt to obtain possession of the minor child through the police.

¶ 16    Counsel for respondent argued that there were not multiple actions, because "just because he transported his wife to the police station to see if the police could help does not constitute a

4

course of conduct, nor is it contact to or toward any of the requested protected parties." Counsel argued that respondent did not enter the school or attempt to contact the child at school.

¶ 17 Following argument of the parties, the trial court stated: "I fully believe that Mr. and Mrs. Harper went to that school in an attempt to pick up the minor child upon news that Mr. Duck had passed away. There would have been no other reason for her to go to that school on that day." The trial court noted that respondent "should have used better judgment." The court noted that respondent "chose to get in that car and drive across the river with full knowledge that he is not allowed around not only just Brianna, it said all kids." The court next observed that it

"refuse[d] to believe that Mr. Harper was just so ignorant as to he didn't know what plan him and his wife had devised before they left that house in Missouri. They left with the intention of getting that minor child, because, as you just so eloquently stated, if you don't believe there's a parenting plan, I'm sure they don't believe there is a parenting plan. Dad died. I want my kid back. Let's get in the car and go to the school."

The court noted, "If she would have gained access to that minor child she would have put that minor child in the car with Mr. Harper. No doubt in my mind."

¶ 18 The trial court determined that the first contact was respondent driving to the school. The court determined that the second contact was respondent driving down the street in front of petitioner's home. The court also noted that the school visit was "qualifying" where respondent should have known that he would cause "emotional distress." For these reasons, the court granted the plenary stalking/no contact order for a term of two years. This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20     Respondent appeals, arguing first that the trial court's denial of respondent's motion for directed verdict was an abuse of discretion. Respondent also argues that the trial court's granting of the stalking no contact order was against the manifest weight of the evidence. For the reasons that follow, we disagree and affirm. We consider each argument in turn.

¶ 21     Respondent first argues that the trial court's denial of his motion for directed verdict was an abuse of discretion. Specifically, respondent argues that he "is not aware of any authority that would allow one adult to file a Petition for a stalking no contact order for another adult without showing the Petitioner is the guardian of the other adult." Petitioner responds, arguing that respondent waived any objection to standing regarding Brianna. For the following reasons, we find that respondent forfeited review of this contention of error.

¶ 22     The doctrine of standing " 'is designed to preclude persons who have no interest in a controversy from bringing suit,' and 'assures that issues are raised only by those parties with a real interest in the outcome of the controversy.' " *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 24 (quoting *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999)). Lack of standing is an affirmative defense and the defendant's burden to plead and prove. *Id.* A defendant can forfeit the issue of standing if he failed to raise it before the trial court in a timely manner. *Id.*

¶ 23     The record demonstrates that respondent failed to object to Brianna's inclusion in the petition during his motion for a directed finding or in his closing argument. He also failed to file a motion to reconsider raising the issue. Succinctly stated, respondent never brought an issue of standing to the attention of the trial court. As such, we agree with petitioner that respondent forfeited consideration of this issue.

6

¶ 24    Second, respondent argues that the trial court's entry of a stalking no contact order was against the manifest weight of the evidence. Specifically, respondent argues that petitioner "only established one contact" between petitioner and respondent and "one contact" between respondent and Brianna. Respondent argues that petitioner established "no contact" between respondent and Casey. Thus, respondent contends that the trial court erred by granting the stalking no contact order. Petitioner responds, arguing that the entry of the plenary stalking no contact order was not against the manifest weight of the evidence. In support, petitioner argues that the evidence demonstrated that respondent's actions caused reasonable fear for the safety of petitioner and the protected parties. We agree with petitioner.

¶ 25    Pursuant to the Stalking No Contact Order Act (Act), a victim of stalking may seek a civil remedy requiring the stalker to stay away from the victim. 740 ILCS 21/5 (West 2024). The Act defines stalking as "engaging in a course of conduct directed at a specific person," when the respondent "knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace, school, or place of worship, or the safety of a third person or suffer emotional distress." *Id.* § 10. A course of conduct means two or more acts "including but not limited to acts in which a respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, or threatens a person, workplace, school, or place of worship." *Id.*

¶ 26    The stalker's conduct must be nonconsensual, but the victim need not contact the stalker to inform the stalker that the contact is unwanted. *Piester v. Escobar*, 2015 IL App (3d) 140457, ¶ 12. The Act focuses on whether the stalker's behavior would cause a reasonable person to be fearful for his safety or to suffer emotional distress. *Id.*; *McNally v. Bredemann*, 2015 IL App (1st) 134048, ¶ 14. A reasonable person is "a person in the petitioner's circumstances with the

7

petitioner's knowledge of the respondent and the respondent's prior acts," while emotional distress is defined as "significant mental suffering, anxiety or alarm." 740 ILCS 21/10 (West 2024).

¶ 27   A petitioner seeking a stalking no contact order is required to prove stalking by a preponderance of the evidence. *Piester*, 2015 IL App (3d) 140457, ¶ 12; 740 ILCS 21/30(a) (West 2024). This court will not reverse a circuit court's decision to issue a stalking no contact order unless it is against the manifest weight of the evidence. *Piester*, 2015 IL App (3d) 140457, ¶ 12. A ruling is against the manifest weight of the evidence if it is clearly apparent that the opposite conclusion should have been reached or the ruling is unreasonable, arbitrary, or not based upon the evidence presented. *McNally*, 2015 IL App (1st) 134048, ¶ 12. In addition, when reviewing the circuit court's judgment, this court will not disturb the circuit court's determinations regarding witness credibility, as such questions are for the circuit court to resolve as the trier of fact. *Id.* ¶ 14.

¶ 28   In the case before us, the evidence demonstrated that respondent attempted to contact Brianna and Casey following news of their father's death. Petitioner testified that respondent drove by her home on February 26, 2025. Brianna was in the front yard and saw respondent. Petitioner testified that Brianna was "screaming." Petitioner went outside and also observed respondent at a stop sign in front of the home. Petitioner testified that respondent was 20 or 25 feet away, and Brianna was frightened. Petitioner contacted the local police department.

¶ 29   Brianna also testified. Brianna observed respondent in a white SUV at a stop sign in front of the home. Brianna testified that she was in the yard, and she observed respondent "in his vehicle by the stop sign." Brianna felt "intimidated, scared, and uncomfortable." Brianna testified that she was fearful of respondent.

¶ 30   The evidence also established that respondent drove Crystal to Casey's school in an attempt to retrieve Casey from the school. Brian Levin, the school assistant principal, testified that Crystal

8

came to the school and asked to see Casey. Crystal advised that "she would like to remove her from the school" or to "pick her up from school." Casey was not at school that day, and Crystal left. Levin observed Crystal leave, and noted that she was "picked up" in a white SUV. The testimony of petitioner and Brianna established that respondent drove a white SUV on the date in dispute.

¶ 31    Next, respondent and Crystal went to the local police station. Officer Cleveland testified that he met with Crystal and respondent at the police station. Crystal wanted to "talk to her child." Crystal asked the police to go to the home to retrieve the child.

¶ 32    Respondent contends that this evidence was insufficient to establish two contacts with each individual in the petition. However, this evidence establishes an ongoing course of conduct where respondent both directly and indirectly attempted to contact Brianna, Casey, and petitioner. The evidence demonstrates that respondent engaged "in a course of conduct directed at a specific person," when the respondent "knows or should know that this course of conduct would cause a reasonable person to fear for his or her safety, the safety of a workplace, school, or place of worship, or the safety of a third person or suffer emotional distress." 740 ILCS 21/10 (West 2024). Respondent engaged in three acts in which "respondent directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, or threatens a person, workplace, school, or place of worship." *Id.* Specifically, respondent went to the family home, Casey's school, and even attempted to coerce police to retrieve Casey. Based on our review of the allegations in the petition, as well as the court's thorough and well-reasoned order, we conclude that it is not clearly apparent that the opposite conclusion to that reached by the circuit court should have been reached. Moreover, the circuit court's rulings are not unreasonable, arbitrary, or not based upon the evidence presented. Accordingly, the decision to issue the order

9

was not against the manifest weight of the evidence (see, *e.g.*, *McNally*, 2015 IL App (1st) 134048, ¶ 12), and we will not reverse it. *Piester*, 2015 IL App (3d) 140457, ¶ 12. In making this finding, we are guided in part by the longstanding principle that a reviewing court should not disturb the circuit court's determinations regarding witness credibility, as such questions are for the circuit court to resolve as the trier of fact. *McNally*, 2015 IL App (1st) 134048, ¶ 14.

¶ 33                                    III. CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

¶ 35    Affirmed.